OPINION
{¶ 1} Defendant, Eric Hall, appeals from his conviction and sentence for operating a motor vehicle while under the influence of alcohol (OMVI).
{¶ 2} The facts in this case are set forth in the trial court's decision overruling Defendant's Crim.R. 12(C)(3) motion to suppress evidence. They demonstrate that on April 24, 2004, German Township police officers Repik and Kulyn were driving eastbound on State Route 41 in Clark County in a marked cruiser when they observed a motorcycle approaching from the opposing direction at a speed significantly in excess of the posted forty-five mile per hour limit. Sgt. Repik clocked the motorcycle on his radar unit at sixty miles per hour. The officers immediately turned and pursued the motorcycle with their cruiser's lights and siren activated. The motorcycle did not immediately stop, and at times reached speeds approaching one hundred miles per hour. As the officers followed the motorcycle they observed it weaving between the center dividing line and the right edge line.
{¶ 3} After the motorcycle finally stopped just east of North Hampton, Defendant got off the motorcycle and walked back toward the cruiser. Both officers observed Defendant swaying as he walked and saw that there was a wet spot on the crotch of Defendant's pants. The officers also noticed that Defendant's eyes were bloodshot and that there was a strong odor of alcohol on his breath. Suspicious that Defendant might be driving under the influence, Sergeant Repik asked Defendant if he had been drinking. Defendant replied that he had five beers. Sergeant Repik then asked Defendant to perform three field sobriety tests, including the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test, all of which Defendant failed. Defendant was arrested for driving under the influence of alcohol and speeding. A subsequent breath-alcohol test at the police station produced a result of .195.
{¶ 4} Defendant was charged in Clark County Municipal Court with operating a motor vehicle while under the influence of alcohol, R.C. 4511.19(A)(8), and speeding, R.C. 4511.21. Defendant filed a motion to suppress the field sobriety tests and the breath-alcohol test, arguing that police lacked sufficient reasonable suspicion of driving under the influence to detain him for field sobriety tests and that the officers lacked probable cause to arrest him because those tests were not administered in compliance with the guidelines set forth in the National Highway Traffic Safety Administration (NHTSA) manual. Following a hearing the trial court overruled Defendant's motion to suppress evidence.
{¶ 5} Pursuant to a plea agreement, Defendant entered a no contest plea to the driving under the influence charge and was found guilty. In exchange, the speeding charge was dismissed. The trial court sentenced Defendant to six days in jail with three days suspended on condition that Defendant complete the ADAPT program, a two hundred fifty dollar fine plus court costs, and an eighteen month license suspension.
{¶ 6} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
{¶ 7} "IT WAS `UNREASONABLE', WITHIN THE MEANING OF THE FOURTH AMENDMENT, FOR THE OFFICER TO DETAIN APPELLANT FOR PURPOSES OF CONDUCTING FIELD SOBRIETY TESTS WHEN THE OFFICER HAD NO REASONABLE SUSPICION TO BELIEVE THAT APPELLANT WAS INTOXICATED; THUS THE TRIAL COURT ERRED WHEN IT OVERRULED THE SUPPRESSION MOTION."
{¶ 8} Defendant does not challenge the fact that police lawfully stopped him for the speeding violation. Whren v. UnitedStates (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89;Dayton v. Erickson, 76 Ohio St.3d 3, 1996-Ohio-431. However, Defendant argues that the facts known to Sergeant Repik did not create a sufficient reasonable suspicion of driving under the influence of alcohol to warrant the administration of field sobriety tests. We disagree.
{¶ 9} As an initial matter, we note that no transcript of the proceedings on the motion to suppress evidence was filed. Defendant-Appellant states that the court's audio tape system malfunctioned, preventing a record from being made, and that in consequence he attempted to procure an agreed statement of the record pursuant to App.R. 9(C) or (D), but, the prosecutor declined to cooperate and no statement was filed. It also appears that the prosecutor's failure to cooperate was not brought to the attention of the trial court, which could not then have ruled on the matter. Nevertheless, because it is an appellant's obligation to file a transcript, any discrepancies between the evidence and the trial court's extensive findings, must be charged against Defendant-Appellant. However, few such discrepancies are alleged.
{¶ 10} The propriety of any investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. Decisions in cases such as this are highly fact-intensive. Statev. Criswell, 162 Ohio App.3d 391, 2005-Ohio-3876.
{¶ 11} The odor of alcohol on Defendant's breath was described by the officers as strong. Moreover, Defendant's motorcycle was clocked at fifteen miles per hour over the posted limit, and while being pursued by police Defendant reached speeds approaching one hundred miles per hour. That speeding violation is more than a mere nominal traffic violation. Criswell.
Further, though speeding is not necessarily indicative of intoxication, it can be.
{¶ 12} Several other factors indicative of alcohol impairment are present in this case. Defendant's motorcycle was seen weaving between the center dividing line and the right edge line. When Defendant got off his motorcycle and walked toward the police cruiser, he was swaying as he walked, Defendant's eyes were bloodshot, there was a wet spot on the crotch area of Defendant's pants, suggesting that he had urinated on himself, and Defendant told the officers that he had consumed five beers.
{¶ 13} The totality of these facts and circumstances was more than sufficient to create a reasonable, articulable suspicion of driving under the influence that justified the continued detention of Appellant for the purpose of administration of field sobriety tests. Criswell. Defendant's poor performance on those tests, coupled with the foregoing facts, created probable cause to arrest Defendant for driving under the influence of alcohol. The trial court properly overruled Defendant's motion to suppress the evidence.
{¶ 14} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
{¶ 15} "THE TRIAL COURT ERRED WHEN IT FAILED TO EXPLICITLY SUPPRESS THE RESULTS OF THE HORIZONTAL GAZE NYSTAGMUS TEST BECAUSE THE TEST WAS NOT PERFORMED IN SUBSTANTIAL COMPLIANCE WITH THE NHTSA MANUAL."
{¶ 16} Defendant argues that the trial court should have suppressed the results of the horizontal gaze nystagmus test (HGN) administered by Sergeant Repik because that test was not administered in substantial compliance with the NHTSA guidelines. Those guidelines require that the stimulus be held twelve to fifteen inches away from the face of the person being tested.[1] Sergeant Repik admitted that he held the stimulus only two inches away from Defendant's face.
{¶ 17} Pursuant to R.C. 4511.19(D)(4)(b), the results of field sobriety tests are admissible in any prosecution for a violation of R.C. 4511.19(A)or(B) if the test was administered in substantial compliance with testing standards set by the National Highway Traffic Safety Administration.
{¶ 18} The trial court specifically found that the HGN test was not administered by Sergeant Repik in substantial compliance with the NHTSA manual, and for that reason the trial court was precluded from considering the results of that HGN test in determining whether Sergeant Repik had probable cause to arrest Defendant for driving under the influence of alcohol.[2]
Clearly, the trial court did suppress consideration and use of the HGN test results in this case, even though it overruled Defendant's motion to suppress evidence otherwise.
{¶ 19} We agree with the trial court that Defendant's poor performance on the other field sobriety tests, coupled with his statements and the other facts we previously discussed, all of which were known to the officers when they administered the field sobriety tests, are sufficient to create probable cause to arrest Defendant for driving under the influence of alcohol.
{¶ 20} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
{¶ 21} "THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE RESULTS OF THE ONE LEG STAND AND WALK AND TURN TESTS BECAUSE THE RESULTS WERE UNRELIABLE AND BECAUSE THE TESTS SHOULD NOT HAVE BEEN ADMINISTERED ACCORDING TO THE NHTSA MANUAL."
{¶ 22} The trial court found that "[w]hile attempting the one-leg stand, the defendant told officers he had been paralyzed ten years ago." (Decision, paragraph 13). In their written statement to the court, Officer Repik stated: "I asked if (Defendant) had any physical defects, which would prevent him from doing (the) test, and he said he had been paralyzed ten years ago and had a problem with his balance. He said he would try (the) test anyway."
{¶ 23} Defendant argues that his alleged prior injury should have caused the officers to not administer the one-leg stand and walk-and-turn tests because "the NHTSA manual instructs officers to ask their subjects whether the subject suffers from any medical or physical condition that might impair their ability to complete the test, and goes on to list several example conditions that do impact the test results." (Brief, p. 11).
{¶ 24} Defendant has not cited the provisions of the NHTSA Manual on which he relies. The 2004 Edition of the Manual states that a subject's "back, leg or middle ear problems" may produce difficulty in performing the one-leg stand test. (Section VIII-12). Further, a "suspect's age (and) weight" may interfere with his performance of the walk and turn test. (Section VIII-8). The NHTSA Manual does not require inquiries concerning such conditions. Neither does it limit or avoid giving the tests on account of them.
{¶ 25} However it happened, the record shows that the officers were aware of Defendant's alleged physical defects. That permitted Defendant to question the judgments the officer made concerning Defendant's performance of those tests in relation to the probable cause to arrest issue, which is the issue to which compliance with the NHTSA Manual expressly applies. State v.Homan, 89 Ohio St.3d, 421, 2000-Ohio-212. We cannot find that the trial court erred when, absent any evidence of Defendant's alleged defect or the officer's failure to consider it, the court found substantial compliance with the NHTSA Manual in administering these tests.
{¶ 26} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, P.J. And Fain, J., concur.
[1] NHTSA Manual, 2004 Ed., Section VIII-7.
[2] Defendant's Crim.R. 12(C)(3) motion asked the court to suppress evidence of his performance of the field sobriety tests in relation to the probable cause to arrest challenge he made. The court did that with respect to the HGN test results. That the court did not also suppress that evidence from use at any trial portrays no error, inasmuch as the motion did not seek that relief. In any event, had the case gone to trial, Defendant could have asked the court to exclude the HGN evidence on the basis of its prior holding.