OPINION
{¶ 1} Michael E. Howard appeals from a judgment of the Fairborn Municipal Court, which found him guilty following his no contest plea to operating a vehicle while intoxicated (second offense within six years), possession of drug paraphernalia, possession of marijuana, and speeding. Howard entered his plea following the denial of his motion to suppress evidence. For the following reasons, we conclude that the trial court did not err in overruling the motion *Page 2 
to suppress. Accordingly, the judgment will be AFFIRMED.
 I {¶ 2} According to the state's evidence at the suppression hearing, at approximately 2:30 a.m. on October 7, 2006, Michael Howard was driving northbound on I-675 when Ohio State Trooper Ryan Born observed him driving at eighty-one miles per hour. Born initiated a traffic stop for speeding. Born approached the vehicle from the passenger side and informed Howard why he had been stopped. Howard apologized for driving that fast and explained he was going home from work. Howard presented an identification card while he located his driver's license.
 {¶ 3} While speaking with Howard, Born detected "a strong odor of alcoholic beverage coming from the vehicle," and he noticed that Howard's eyes were bloodshot and glassy. When asked how much he had to drink, Howard initially responded that he had had none. Born then asked why he could smell the odor of alcohol in the car. Howard indicated that he had had one drink after work. Born asked Howard to step out of the vehicle to perform standard field sobriety tests. Howard complied.
 {¶ 4} Born had Howard perform the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. Howard exhibited signs of intoxication with each of the tests. At the completion of the one-leg stand test, Born decided to arrest Howard for driving under the influence. Born then asked Howard to submit to a portable breath test at the scene. Howard refused. As Born retrieved his handcuffs and informed Howard that he was being placed under arrest, Howard indicated that he wanted to take the portable breath test. The result of that test was over .08. *Page 3 
 {¶ 5} Howard was arrested and taken to the Fairborn police department. There, Howard submitted to a BAC breath test. The result of that test was also over .08. Apparently, drug paraphernalia and marijuana were located as a result of a search incident to Howard's arrest.
 {¶ 6} Howard was subsequently charged with speeding, driving under the influence, possession of drug paraphernalia, and possession of marijuana. Case Nos. 06-TRC-12056, 06-CRB-2170. Howard filed a motion to suppress. After a hearing, the court denied the motion. Shortly thereafter, Howard pled no contest to the offenses. This appeal followed.
 II {¶ 7} Howard's first assignment of error provides:
 {¶ 8} "THE TRIAL COURT ERRED BY FINDING THAT REASONABLE SUSPICION EXISTED TO PROLONG APPELLANT'S TRAFFIC STOP FOR SPEEDING INTO AN INVESTIGATION FOR OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL."
 {¶ 9} In his first assignment of error, Howard claims that Trooper Born lacked a reasonable suspicion that Howard was driving under the influence of alcohol to warrant the administration of field sobriety tests. In support of his argument, Howard relies upon State v.Dixon (Dec. 1, 2000), Greene App. No. 2000-CA-30, and State v.Spillers (March 24, 2000), Darke App. No. 1504.
 {¶ 10} "In order to warrant removing a person from his vehicle to conduct field sobriety tests, a police officer must have reasonable articulable suspicion to believe that the person was driving under the influence of drugs or alcohol." State v. Knox, Greene App. No. 2005-CA-74, *Page 4 2006-Ohio-3039, ¶ 11. In both Spillers and Dixon, we held that the officers lacked a reasonable suspicion to justify conducting a field sobriety test. We have summarized those cases as follows:
 {¶ 11} "In Spillers the officer was relying only on de minimus traffic violations, a `slight' odor of alcohol, and the admission of alcohol consumption to justify the administration of field sobriety tests. We stated there that `[a] slight odor of alcoholic beverage is insufficient, by itself, to trigger a reasonable suspicion of DUI, andnominal traffic violations, being common to virtually every driver, add nothing of significance. Accordingly, we concluded that the trial court did not err in finding that the detention of Spillers for the purpose of administering a field sobriety test was unlawful.' Spillers, supra (emphasis in the original).
 {¶ 12} "Similarly, in Dixon the officer stopped a car with darkly tinted windows and noticed that the driver had glassy, bloodshot eyes, a slight odor of alcohol, and the admission of alcohol consumption. Because tinted windows do not indicate impairment, the officer was attempting to rely only on the condition of the eyes, the slight odor of alcohol, and the admitted consumption of alcohol to justify the field sobriety tests. We determined that these factors were insufficient to warrant the additional intrusion of field sobriety tests." Knox
at ¶ 9-10; State v. Castle, Montgomery App. No. 21698, 2007-Ohio-5165, ¶ 10-11.
 {¶ 13} Howard argues that the only indicia of intoxication in this case was the smell of alcohol and bloodshot, glassy eyes. He emphasizes that Born testified that he did not appear to be driving poorly, that he did not fumble with papers, that he did not slur his speech, that he was polite and cooperative, and that he was coherent and answered questions correctly and appropriately. *Page 5 
 {¶ 14} Although Howard did not portray the signs of being "falling-down drunk," the present case is distinguishable fromSpiller and Dixon. Howard was stopped for driving eighty-one miles per hour, which was sixteen miles per hour over the speed limit. That speed was not a de minimus violation. State v. Cooper, Clark App. No. 2001-CA-86, 2002-Ohio-2778. Moreover, although speeding is not necessarily indicative of intoxication, it can be. State v. Hall, Clark App. No. 05-CA-6, 2005-Ohio-6672, ¶ 11.
 {¶ 15} When Born approached Howard, Born detected a strong odor of alcohol and he observed that Howard had bloodshot and glassy eyes. Howard initially denied having had anything to drink, and he admitted to "one drink after work" only after Born questioned him about why he could smell alcohol. The trooper could have reasonably believed that Howard was trying to hide or minimize his drinking. Born continued to smell a strong odor of an alcoholic beverage after Howard exited the vehicle. Viewing the totality of the circumstances, Born had a reasonable suspicion that Howard might be driving under the influence of alcohol that justified conducting field sobriety tests. See State v.Criswell, 162 Ohio App.3d 391, 2005-Ohio-3876, 833 N.E.2d 786 (speeding in conjunction with a moderate odor of alcohol; bloodshot, glassy eyes; and a few beers was sufficient justification to conduct field sobriety tests); Cooper, supra (speeding, strong odor of alcohol, bloodshot and glassy eyes, and a having a couple of beers justified field sobriety tests).
 {¶ 16} The first assignment of error is overruled.
 III {¶ 17} Howard's second assignment of error states:
 {¶ 18} "THE TRIAL COURT ERRED BY FINDING THAT PROBABLE CAUSE *Page 6 
EXISTED TO ARREST APPELLANT FOR OPERATING A VEHICLE UNDER THE INFLUENCE OF ALCOHOL WHEN IT IMPROPERLY CONSIDERED THE RESULTS OF A PORTABLE BREATH TEST, AND WHEN THE VIDEOTAPE OF THE OFFICER'S INTERACTION WITH APPELLANT CONTRADICTED THE OFFICER'S TESTIMONY AND REVEALED FUNDAMENTAL FLAWS WITH THE MANNER IN WHICH THE OFFICER CONDUCTED FIELD SOBRIETY TESTS."
 {¶ 19} In his second assignment of error, Howard claims that Trooper Born lacked probable cause to arrest him for driving under the influence of alcohol.
 {¶ 20} At the suppression hearing, Born testified that he had been trained in the administration of field sobriety tests as stated in the NHTSA manual and that he administered the tests to Howard in accordance with his training. He first conducted the HGN test, which checks the eyes for involuntary twitching while tracking a stimulus. Born stated that the test required the stimulus to be twelve to fifteen inches away and that he stood a couple of feet away from Howard. Born indicated that there were six clues of intoxication that he looked for, including whether the eyes rolled smoothly, nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees. Born stated that exhibiting four clues indicates that the individual has a BAC (breath alcohol concentration) higher than .08, which is the legal limit. Howard displayed five clues — three in his left eye and two in this right eye.
 {¶ 21} Born next asked Howard to perform the walk-and-turn test. Born testified that there are eight clues on this test, and that Howard exhibited four clues. Howard did not touch heel-to-toe, he stepped off the line, he lost his balance while making his turn, and he moved his feet while listening to instructions. Born stated that there is "a high possibility" that an *Page 7 
individual is impaired when two clues are exhibited. Born further stated that, when considered along with the HGN test result, exhibiting two clues on the walk-and-turn test indicated a B AC over .10.
 {¶ 22} Born then asked Howard to perform the one-leg-stand test. In this test, an individual is asked to raise one leg off the ground approximately six inches while keeping his hands to his side and looking down at the toe that is raised, and then count out loud for thirty seconds. Born testified that Howard swayed back and forth during the test.
 {¶ 23} Born subsequently asked Howard to submit to a portable breath test. Howard initially refused the test, but agreed to take it after Born indicated that he was being arrested for driving under the influence. The breath test result was over .08.
 {¶ 24} Pursuant to R.C. 4511.19(D)(4)(b), the results of field sobriety tests are admissible in any prosecution for a violation of R.C. 4511.19(A) or (B) if the test was administered in substantial compliance with testing standards set by the National Highway Traffic Safety Administration. Hall at ¶ 11.
 {¶ 25} On appeal, Howard asserts that Trooper Born failed to administer the field sobriety tests in compliance with National Highway Traffic Safety Administration ("NHTSA") standards. With the HGN test, Howard states that Born held his flashlight off to the side, that he instructed Howard to place his hands on his cheeks, and that he held his pen less than twelve inches from Howard's face. Upon review of the videotape, there is no evidence that the location of Howard's hands or Born's flashlight invalidated the HGN test. As stated by the state, there is no evidence that Born was "moving his flashlight or that the flashlight or any other moving light caused the detected nystagmus." Moreover, while Born testified that the manual did not instruct *Page 8 
drivers to place their hands on their checks, there is no evidence that Born's instruction to Howard to place his hands on his checks was contrary to the manual. Due to the distance of the cruiser from the testing location, we cannot determine from the videotape whether the pen was too close to Howard and, if so, to what extent. The trial court apparently credited Born's testimony that he administered the test in compliance with NHTSA standards, which he stated included the requirement that the stimulus be twelve to fifteen inches away from Howard.
 {¶ 26} Howard also states that Born conducted the one-leg stand for forty seconds instead of thirty. Although the videotape indicated that Howard was required to stand on one leg for forty seconds, we do not find this minor procedural deviation to invalidate the test.
 {¶ 27} Howard challenges Born's credibility, stating that a review of the videotape fails to reveal any of the clues of intoxication that the officer claimed to have observed. Although many of the clues identified by Born are not seen on the videotape, much of Howard's body was obscured by his vehicle. Consequently, much of the trial court's determination of probable cause was dependent upon its evaluation of Born's credibility. The trial court was in the best position to evaluate the credibility of the witness, and the trial court found Born to be credible. The record thus supports the conclusion that Trooper Born conducted the field sobriety tests in substantial compliance with the NHTSA manual.
 {¶ 28} Howard further claims that the trial court erred in considering the results of the portable breath test that was administered at the scene. Although a portable breath test may not be accurate enough for a per se violation under R.C. 4511.19(A)(1)(d), some Ohio courts have held that an officer is entitled to consider the results of a portable breath test in weighing whether there exists probable cause to arrest. E.g.,State v. Masters, Wood App. No. WD-06-045, *Page 9 2007-Ohio-7100; State v. Coates, Athens App. No. 01CA21, 2002-Ohio-2160. But see State v. Ferguson, Defiance App. No. 4-01-34, 2002-Ohio-1763 (results of portable breath test could not be used to determine probable cause). We have not yet decided this issue.
 {¶ 29} Regardless, Born testified that he had decided to arrest Howard for driving under the influence of alcohol after he completed the field sobriety tests and before he asked Howard to take the portable breath test. Considering that Howard failed each of the field sobriety tests, smelled strongly of an alcoholic beverage, had glassy and bloodshot eyes, and admitted to consuming alcohol, the officer had probable cause to believe that Howard was driving under the influence of alcohol even without the results of the portable breath test. Accordingly, the trial court's consideration of the results of the portable breath test was, at most, harmless.
 {¶ 30} The second assignment of error is overruled.
 IV {¶ 31} Having overruled each of the assignments of error, the judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1