[Cite as *State v. Tyner*, 2014-Ohio-2809.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25405 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-2970 |
| v. | : | |
| | : | |
| ALICIA S. TYNER | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 27th day of June, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

CHRISTOPHER W. THOMPSON, Atty. Reg. #0055379, 130 West Second Street, Suite 1444, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.,

        **{¶ 1}**     Alicia  S.  Tyner  appeals  from  her  conviction  and  sentence  on  charges  of

aggravated vehicular homicide, aggravated vehicular assault, and evidence tampering.[1]

{¶ 2}   Tyner advances two assignments of error. First, she contends the trial court erred in overruling her motion to suppress evidence. Second, she claims the trial court erred in imposing partially consecutive sentences without making required findings.

---

[1] Tyner was found guilty of additional charges that merged into the three identified above.

**{¶ 3}** The charges against Tyner stemmed from a fatal traffic accident. Driving with a suspended license and a blood-alcohol level more than twice the legal limit, Tyner crossed the center line and hit another car. The accident seriously and permanently injured the seventy-nine-year-old other driver and killed his daughter who was a passenger in that vehicle. At the scene, police made contact with Tyner, who suffered a small abrasion on her knee. As she complained about the damage to her car and blamed the other driver, police detected a strong odor of alcohol on her breath. Police also noticed her glassy, bloodshot eyes and purportedly slurred speech.[2] She admitted having consumed three beers. At that point, Tyner underwent field-sobriety tests. According to the officer who administered the tests, she failed them all. She was placed under arrest and taken to an area hospital where blood was drawn pursuant to a warrant. Subsequent testing revealed a blood-alcohol content of .182.

**{¶ 4}** Prior to trial, Tyner moved to suppress certain evidence, including the field-sobriety test results and blood-alcohol test results. She argued that the field-sobriety tests were not conducted in substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards and that the blood sample was not collected and handled in substantial compliance with the Ohio Administrative Code. Following a hearing, the trial court overruled Tyner's motion. The case proceeded to trial, and a jury found her guilty on a number of charges. After merging allied offenses, the trial court imposed an aggregate twelve-year prison sentence for aggravated vehicular homicide, aggravated vehicular assault, and evidence tampering. This appeal followed.

---

[2] Having reviewed the DVD exhibit of Tyner talking to an officer and performing field-sobriety tests, we did not notice any apparent slurred speech. (*See* State's Exh. 31). However, Deputies Parrott (MTS Transcript 10, 20) and Evers (Id. 120) both testified to slurred speech during conversations that were before the video recording.

**{¶ 5}** In her first assignment of error, Tyner challenges the trial court's denial of her suppression motion. She argues that the record does not reveal substantial compliance with National Highway Traffic Safety Administration (NHTSA) standards for administering field-sobriety tests. She also asserts that the collection and handling of her blood was not in substantial compliance with Ohio Department of Health regulations.

**{¶ 6}** The record reflects that Tyner participated in three field-sobriety tests: the horizontal-gaze-nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. With regard to the HGN test, she contends the officer who administered it did not track her eyes for the correct amount of time. Specifically, she claims he failed to track each eye for two seconds, to hold the stimulus at maximum deviation for four seconds, or to check the onset of nystagmus before forty-five degrees for the proper amount of time. Regarding the walk-and-turn test, Tyner claims a lack of substantial compliance because the officer (1) required her to perform the test on an unlevel surface, (2) did not provide her with a designated straight line, and (3) did not "pre-qualify" her for the test due to her injuries, her "excess weight," and commotion at the scene. Finally, on the one-leg-stand test, Tyner claims a lack of substantial compliance because the officer (1) exceeded the thirty-second duration of the test, (2) had her start over, and (3) failed to inquire whether she was fifty or more pounds overweight.

**{¶ 7}** The applicable legal requirement for admission of field sobriety tests is whether they were conducted in substantial compliance with NHTSA standards. R.C. 4511.19(D)(4)(b); *State v. Davis*, 2d Dist. Clark No. 2008 CA 65, 2009-Ohio-3759, ¶ 14-15. This court has recognized that substantial compliance with NHTSA's requirements "is a legal standard for a court's determination." *Id.* at 18. "We defer to the trial court's factual findings and independently

determine whether they demonstrate substantial compliance" with the standards. *Id.*

{¶ 8}   Upon review, we see no error in the trial court's finding of substantial compliance. Here the officer testified about his training, experience, and compliance with the applicable NHTSA standards. In addition, the trial court had before it a DVD of Tyner performing the field-sobriety tests. Having reviewed the testimony and the DVD, we believe substantial compliance was established. For the HGN test, NHTSA standards provide for the stimulus to be moved "at a speed that requires approximately two seconds to bring the suspect's eye as far to the side as it can go." The stimulus is to be moved all the way across the suspect's face at a speed that is "approximately two seconds out and two seconds back for each eye." The test also involves holding the suspect's eye at maximum deviation for at least four seconds. Finally, it requires moving the stimulus to the right and then the left "at a speed that would take approximately four seconds for the stimulus to reach the edge of the suspect's shoulder." (Def. Exh. BBB at VIII-7). Although it is somewhat difficult to tell from the DVD precisely how long the officer moved the stimulus or held it in place, we are persuaded that he substantially complied with the foregoing time requirements, most of which by their terms involved approximations.[3]

{¶ 9}   With regard to the walk-and-turn test, the video does not support Tyner's claim that she was required to perform on an unlevel surface. The test was administered on a smooth,

---

[3]The only exception is the requirement to hold the suspect's eye at maximum deviation for "at least four seconds." At trial, the officer who performed the field-sobriety tests admitted that he was "a little quick" and did not hold the stimulus for a full four seconds. (Tr. Vol. IV at 819-820). We are unpersuaded, however, that this shortcoming requires exclusion of the test and reversal of Tyner's convictions. The record reflects that the officer checked for six "clues" of intoxication during the HGN test, three in each eye. (Tr. Vol. III at 614).   He found all six clues present. (*Id.* at 620). Even if we were to ignore the two clues he observed while holding Tyner's left and right eye at maximum deviation, four valid clues of intoxication would remain. The officer testified that finding four clues still is considered a failure and is indicative of being under the influence of alcohol. (*Id.* at 614). Therefore, any error in the officer's administration of the HGN test was harmless beyond a reasonable doubt.

dry, and relatively flat roadway. Although no marked straight line existed, the officer instructed Tyner to walk an imaginary straight line between two police cruisers. The NHTSA manual does not require the use of an actual marked line. The instructions expressly contemplate the use of an "imaginary" line. (*Id*. at VIII-9). As for pre-qualifying Tyner, she was asked about her physical condition and denied having any injuries that would affect her ability to perform the field-sobriety tests. Only after performing poorly did she refer the officer to her knee, which apparently had a small abrasion from the accident. In addition, nothing in the NHTSA manual precludes a heavy person from performing the walk-and-turn test. The manual's only reference to weight in connection with the walk-and-turn test is in a list of factors that "may interfere with a suspect's performance[.]" Those factors include wind, weather, age, weight, and footwear. (*Id*. at VIII-18). As for her argument about commotion, the video reveals nothing that reasonably might have affected her performance. The officer administered the test in a controlled area away from bystanders.

{¶ 10}  With regard to the one-leg-stand test, the video does not support Tyner's claim that she was required to perform for forty-four seconds or that she was compelled to start over. The record reflects that Tyner put her foot down part way through the test, raised her other foot, and voluntarily started over. She performed for about nine seconds on one foot before switching to her other foot for twenty-four seconds. At that point, the officer stopped her because thirty seconds had elapsed. Under these circumstances, we find substantial compliance despite the fact that the test lasted thirty-three seconds rather than thirty seconds as prescribed by the NHTSA manual. *Cf. State v. Howard*, 2d Dist. Greene No. 2007 CA 42, 2008-Ohio-2241, ¶ 26 (finding substantial compliance where a one-leg-stand test lasted for forty seconds). As for Tyner's claim

that the officer failed to inquire whether she was fifty or more pounds overweight, the NHTSA manual did not require him to ask that question. The manual simply cautions "that certain individuals over 65 years of age, [people with] back, leg or inner ear problems, or people who are overweight by 50 or more pounds had difficulty performing [the one-leg-stand] test." (Def. Exh. BBB at VIII-14). *Cf. State v. Robertson*, 10th Dist. Franklin No. 03AP-277, 2004-Ohio-556, ¶ 10 ("It is true that Trooper Cvetan testified that he did not ask appellant about eye defects. It is also true that the NHTSA instructs that an officer administering an HGN test should look for possible medical conditions that might compromise the test results. However, the NHTSA Manual does not require that [an] officer administering an HGN test specifically inquire whether [the] individual being tested has a defect of the eye."). Therefore, we are not persuaded that the officer's failure to question Tyner about her weight resulted in less than substantial compliance with NHTSA standards.[4]  In addition, the record fails to establish that Tyner was at least fifty pounds overweight.[5]

{¶ 11}  Finally, Tyner argues that the "collection and handling" of her blood did not substantially comply with Ohio Admin. Code 3701-53-05(B) or (C). Therefore, she asserts that the trial court should have suppressed the blood-alcohol test results. Tyner's appellate argument

---

[4] In *State v. Beagle*, 2d Dist. Clark No. 2002-CA-59, 2003-Ohio-4331, this court applied the former strict-compliance standard and found non-compliance where an officer failed to inquire about a suspect's physical ability to perform field-sobriety tests. In that case, the officer also testified that being more than sixty years old and more than fifty pounds overweight "combined" would result in the one-leg-stand test being "excluded." *Id.* at 22-23. We find *Beagle* distinguishable for several reasons. First, it applied a strict-compliance standard rather than the current substantial-compliance standard. Second, the officer in Tyner's case *did* inquire about her physical ability to perform the field-sobriety tests before she took them. Third, we see nothing in the NHTSA manual automatically excluding one-leg-stand test results when a suspect is over a certain age and weight, and the officer in this case did not so testify. In our view, evidence of Tyner being more than fifty pounds overweight, if it existed, would affect the weight of her one-leg-stand test result, not its admissibility.

[5] It is not obvious to us, based on our review of the field-sobriety-test DVD, that Tyner was at least fifty pounds overweight.

implicates the following administrative requirements:

> (B) When collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin. Alcohol shall not be used as a skin antiseptic.

> (C) Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested.

Ohio Admin. Code 3701-53-05(B) and (C).

{¶ 12} Here Tyner contends the emergency-room nurse, Leanne Bussey, did not testify whether an aqueous solution of a non-volatile antiseptic was used or whether the antiseptic contained alcohol. Tyner also claims an unidentified preservative was present in the blood-sample vials and Bussey did not testify whether it was alcohol-based. For these reasons, Tyner asserts that the State failed to establish substantial compliance with the administrative regulations.

{¶ 13} We find Tyner's argument unpersuasive for three reasons. First, we do not believe her suppression motion sufficiently challenged compliance with the foregoing requirements of Ohio Admin. Code 3701-53-05(B) and (C). Pursuant to Crim.R. 47 and *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), a suppression motion must "state with particularity the legal and factual issues to be resolved," thereby placing the prosecutor and court "on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived." *State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994). Here Tyner filed a supplemental memorandum in support of her suppression motion. (Doc. #26). In forty-nine numbered paragraphs, it alleged a violation of virtually every

requirement in every sentence of the pertinent Ohio Revised Code and Ohio Administrative Code provisions. By alleging every conceivable violation, including those argued above, Tyner essentially "wrapp[ed] the administrative code in a folder and fil[ed] it." (Citations omitted) *State v. Stoner*, 6th Dist. Ottawa No. OT-05-042, 2006-Ohio-2122, ¶ 26. Such an approach does not give the prosecutor or the court adequate notice of the issues truly in dispute. Insofar as she alleged a violation of everything, Tyner alleged a violation of nothing in particular. Finding compliance with Crim.R. 47 and *Xenia v. Wallace* where a defendant simply files a document claiming a violation of every sentence of the administrative regulations pertaining to blood testing effectively would eliminate the need to identify with particularity the legal and factual basis for suppression. Indeed, the same boilerplate memorandum could be used in all cases. For the foregoing reasons, we do not believe Tyner adequately placed the State on notice of the need to present suppression-hearing testimony establishing compliance with Ohio Admin. Code 3701-53-05(B) and (C).

{¶ 14} This conclusion is not contrary to the Ohio Supreme Court's recent decision in *State v. Codeluppi*, Slip Opinion No. 2014-Ohio-1574. There a trial court denied a motion to suppress field-sobriety test results without a hearing, finding that the motion failed to state with particularity how NHTSA standards had been violated. In a two-to-one opinion, the Ninth District affirmed. The dissenting judge reasoned that the motion contained adequate factual assertions and legal authority to support a claim that the arresting officer had not substantially complied with NHTSA standards. The dissenting judge distinguished that case from *State v. Zink*, 9th Dist. Summit No. 17484, 1996 WL 502317 (Sept. 4, 1996), in which the Ninth District previously had opined that "'[t]he State cannot be expected to anticipate and prepare to address every possible violation of Ohio Revised Code 4511.19(D), 4511.191(A) through (D) and Ohio

Department of Health Regulations under O.A.C. 3701-53-01 et seq., without any clue as to *which* violation was alleged to have occurred.'" *State v. Codeluppi*, 9th Dist. Lorain No. 11CA010133, 2012-Ohio-5812, ¶ 44 (Belfance, J., dissenting). The dissenting judge stated: "Far from the motion to suppress in *Zink*, which broadly alleged violations of R.C. 4511.19(D), R.C. 4511.191(A)-(D), and OAC 3701-53-01 et seq., Ms.Codeluppi narrowly alleged that the officer had not conducted the horizontal-gaze-nystagmus test, the walk-and-turn test, or the one-legged-stand test in substantial compliance with NHTSA as required by R.C. 4511.19(D)(b)(4)." *Id.* On further review, the Ohio Supreme Court agreed with the dissent. Citing *Shindler*, supra, and Crim.R. 47, the majority reasoned:

> *Shindler* does not require that a defendant set forth the basis for suppression in excruciating detail. Instead, the question is whether the language used provides sufficient notice to the state. After all, "[t]he motion to suppress is merely a procedural vehicle to 'put the ball into play' and serve notice that the defendant intends to have the state meet its legislatively mandated burden of demonstrating compliance with any and all challenged regulations and requirements." Weiler & Weiler, Baldwin's Ohio Driving Under the Influence Law, 2012-2013, Section 9:13, at 265 (2012). Codeluppi's motion meets this standard. She alleged that the officer had not conducted the field sobriety tests in substantial compliance with NHTSA guidelines as required by R.C. 4511.19(D)(4)(b). This statement was sufficient to identify the issues Codeluppi was raising. We agree with the dissenting judge below that the state could have no doubt about the basis for the motion to suppress.

> The primary source of evidence normally available to an OVI

defendant—a video recording of the field sobriety tests—was not available in this case. Defense counsel had no readily available reliable evidence from which counsel could formulate more particularized grounds regarding the police officer's failure to substantially comply with NHTSA guidelines. Codeluppi therefore provided notice of legally significant facts to the extent that the facts were available, rendering her motion more than a mere fishing expedition.

*State v. Codeluppi*, Slip Opinion No. 2014-Ohio-1574, ¶ 13-14.

{¶ 15} Although the motion at issue in *Codeluppi* was broad, it was not as all-encompassing as Tyner's supplemental memorandum or as the motion in the *Zink* case referenced in Judge Belfance's dissent. Tyner filed a boilerplate memorandum that, much like the motion at issue in *Zink*, unreasonably alleged every conceivable violation of Ohio Admin. Code 3701-53-01, et seq., at times plainly without any basis.[6] We are not convinced that the Ohio Supreme Court would find Tyner's memorandum sufficient in this case.

{¶ 16} In any event, Tyner's appellate argument fails for a second reason. Even if she properly placed the State on notice of the issues she was raising, she later narrowed those issues considerably. After the State presented its suppression-hearing evidence, Tyner filed a new "memorandum in support of motion to suppress" on April 16, 2012. (Doc. #37). With regard to

---

[6]Unlike *Codeluppi*, basic discovery or investigation by defense counsel could have eliminated some of Tyner's forty-nine arguments challenging the blood-test results. For example, her memorandum alleged that the blood sample was not drawn by a registered nurse or other qualified person as required by R.C. 4511.19(D)(1). (Doc. #26 at 2). The blood vials themselves bear stickers establishing that the person who drew the blood was "RN" Leanne Bussey. (State's Exh. 30). Tyner's memorandum also alleged a failure to retain the samples as required by Ohio Admin. Code 3701-53-06(A). (Doc. #26 at 3). She made this allegation despite the fact that the samples still exist to this day. She also alleged that the samples were not in vials with labels displaying her name and the collection date. (*Id*). Again, this is demonstrably false—a fact that could have been discovered by looking at the vial.

the blood testing, and based on the suppression-hearing testimony, she argued *only* that (1) the State failed to establish a proper chain of custody for her blood sample, (2) the blood-test kit could have been expired, (3) nurse Bussey did not know whether Tyner had received any medication prior to the blood draw, and (4) Bussey was relatively inexperienced and unfamiliar with the applicable regulations. (*Id*. at 11-13). Because Tyner did not raise any argument in her April 16, 2012 memorandum regarding the nature of the antiseptic that was used or whether it contained alcohol, she waived that issue before the trial court. She also *never* raised any argument below regarding the presence of an unidentified preservative in the blood-sample vials. Therefore, that issue is not properly before us either.

{¶ 17}  Finally, we find Tyner's argument about her blood sample unpersuasive for a third reason. As set forth above, she contends Bussey did not testify whether an aqueous solution of a non-volatile antiseptic was used or whether the antiseptic contained alcohol. She also claims an unidentified preservative was present in the blood-sample vials, and Bussey did not testify whether it was alcohol-based. These claims fail to establish a lack of substantial compliance with Ohio Admin. Code 3701-53-05(B) and (C).

{¶ 18}  We see nothing in Ohio Admin. Code 3701-53-05(B) and (C) that prohibits, or even addresses, the use of a preservative, which appears to be standard in OVI blood draws. Moreover, the record contains no evidence that the preservative at issue contained alcohol. With regard to the antiseptic, it is true that Bussey did not specifically testify about applying an aqueous solution of a non-volatile, non-alcoholic antiseptic. Nevertheless, her testimony reasonably supports an inference that she complied with the applicable administrative regulations. Bussey explained that she used a sealed kit that is specifically for OVI blood draws. (Suppression Tr. at 68, 70-71). The kit contained, among other things, two gray-topped tubes and

a "Betadine prep." (*Id*. at 71). Bussey rubbed Tyner's skin with a Betadine swab from the kit. (*Id*. at 72). She explained that Betadine is a different antiseptic than what she usually uses at the hospital. (*Id*. at 89). Specifically, she stated: "On the prep it says Betadine prep and Betadine is a brownish color versus every other antiseptic we use." (*Id*. at 92). Bussey also testified that the requirements she was to follow were contained in the OVI blood-draw kit. She explained: "There's a list on what should be in there and how to go about obtaining the specimen." (Id. at 97).

{¶ 19} Although Bussey did not state that Betadine is non-volatile and non-alcoholic, those facts circumstantially are supported by her testimony that the Betadine swab came directly from a sealed OVI blood-draw kit. In any event, this court can take judicial notice that Betadine does not contain alcohol. That fact is capable of accurate and ready determination by resort to sources whose accuracy reasonably cannot be questioned. *State v. Mays*, 83 Ohio App.3d 610, 614, 615 N.E.2d 641 (4th Dist.1992) (citing the Physician's Desk Reference and Tabor's Cyclopedic Medical Dictionary and taking judicial notice that Betadine does not contain alcohol). Similarly, we can take judicial notice that Betadine is non-volatile. Betadine is a brand name for povidone iodine. *Mays* at 614. Povidone iodine is non-volatile. *See*, *e.g.*, Kadam, Mahadik & Bothara, *Principles of Medicinal Chemistry Vol. I*, pg. 17 (Pragati Books 18th Ed.2007). In short, by testifying that she swabbed Tyner's skin with Betadine, Bussey complied with the Ohio Administrative Code because Betadine *is* an aqueous solution of a non-volatile antiseptic that does not contain alcohol. Accordingly, we reject Tyner's argument that the record does not reveal substantial compliance with the administrative regulations. The first assignment of error is overruled.

{¶ 20} In her second assignment of error, Tyner contends the trial court erred in

imposing partially consecutive sentences without making the requisite findings under R.C. 2929.14(C)(4). The State has conceded error, and we agree.

{¶ 21} Before imposing consecutive sentences for aggravated vehicular homicide and aggravated vehicular assault,[7] the trial court was required to find: (1) "consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).    {¶ 22} With regard to consecutive sentences, the trial court found only that "concurrent sentencing would not adequately punish the Defendant for each of the victims in this case." (Sentencing Tr. at 13). The additional findings required under R.C.

---

[7] The trial court imposed a concurrent sentence for the evidence-tampering conviction.

2929.14(C)(4) were not made. Accordingly, the matter must be remanded for resentencing. The second assignment of error is sustained.

{¶ 23}   Based on the reasoning set forth above, the judgment of the Montgomery County Common Pleas Court is affirmed in part and reversed in part, and the cause is remanded for further proceedings. Specifically, the judgment is reversed with regard to Tyner's sentence, and the cause is remanded for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to enter the necessary findings on the record. In all other respects, the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
Kirsten A. Brandt
Christopher W. Thompson
Hon. Gregory F. Singer