[Cite as *State v. Allen*, 2025-Ohio-2353.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2024-CA-67 |
| Appellee | : | |
| | : | Trial Court Case No. 23-CR-645 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JASON ALLEN | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 3, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

Tucker, J.; Lewis, J.; and Huffman, J. concur.

For the court,

[[Applied Signature]]

MICHAEL L. TUCKER, JUDGE

**OPINION**
CLARK C.A. No. 2024-CA-67

K. GEORGE KORDALIS, Attorney for Appellant
CHRISTOPHER P. LANESE, Attorney for Appellee

TUCKER, J.

{¶ 1} Jason Allen appeals from his conviction following a no-contest plea to operating a motor vehicle while under the influence of alcohol (OVI), a fourth-degree felony.

{¶ 2} Allen challenges the trial court's overruling of his suppression motion. He contends that a highway patrol trooper lacked reasonable, articulable suspicion of an OVI violation to request his participation in field-sobriety tests. He also challenges the validity of his consent to a breathalyzer test because the trooper stated that he could not refuse the test. Finally, he claims the trooper violated his right to counsel by denying his request to speak to an attorney before taking the breathalyzer test.

{¶ 3} We conclude that the trooper possessed reasonable, articulable suspicion of an OVI violation when he asked Allen to perform field-sobriety tests. When Allen refused to perform the tests, the trooper also possessed probable cause to arrest him for driving under the influence of alcohol. Regarding his consent to take a breathalyzer test, Allen had no constitutional right to refuse the test. The trooper's act of requiring him to take a test he had no legal right to refuse did not provide grounds for suppressing the test result. The trial court also correctly found that Allen had no constitutional right to speak to an attorney before taking the breathalyzer test. Accordingly, the trial court's judgment will be affirmed.

# I. Background

{¶ 4} Ohio State Highway Patrol Trooper Harry Baumgartner observed Allen driving 71 miles per hour in a 45-mile-per-hour zone on the afternoon of August 12, 2023. Baumgartner initiated a traffic stop as Allen exited State Route 72 and entered the Interstate 70 on-ramp. Allen made an unusually wide turn onto the ramp and promptly stopped on the shoulder of the ramp in response to Baumgartner's lights and siren.

{¶ 5} Upon approaching Allen's vehicle, the trooper detected a mild odor of alcohol. He obtained Allen's driver's license and returned to his cruiser. After checking the license on his computer, Baumgartner approached Allen's vehicle again. While interacting with Allen, the trooper detected a strong odor of alcohol. He explained that he suspected Allen was under the influence of alcohol. Based on that suspicion, Baumgartner asked Allen to step out of the vehicle. Allen complied and began walking toward the trooper's cruiser. As he did so, he took two small missteps to the side, appearing to stagger or stumble slightly. He admitted to the trooper that he had consumed some alcohol the previous night.

{¶ 6} Once out of the vehicle, Allen refused to perform field-sobriety tests. Based on the totality of his observations during the interaction, Baumgartner arrested Allen for OVI and took him to the Springfield Highway Patrol post. Once there, Allen was informed of his *Miranda* rights and the consequences of refusing chemical testing for alcohol consumption. Noting that Allen had three prior OVI convictions within 10 years, Baumgartner also advised him that he could not refuse to take a breathalyzer test. In response, Allen asked to speak to an attorney. Baumgartner responded that Allen could do so "but not right now." After being told that he had no right to refuse a breathalyzer test, Allen took the test, which resulted in a breath-alcohol reading of .210 grams. As a result, he was charged with one count of driving while under the influence of alcohol and one count of driving with a prohibited breath-alcohol

content. Based on his prior convictions, both charges were fourth-degree felonies.

{¶ 7} Allen subsequently filed a suppression motion. As relevant here, he argued that Baumgartner had lacked a legal basis to extend the traffic stop by asking him to perform field-sobriety tests. He also argued that Baumgartner had violated his right to counsel by denying his request to speak to an attorney. Finally, he asserted that his consent to the breathalyzer test had been invalid because Baumgartner coerced him by stating that he had no right to refuse.

{¶ 8} Following an evidentiary hearing, the trial court overruled the suppression motion, rejecting the foregoing arguments and others. Allen then pled no-contest to count one, which charged him with driving under the influence of alcohol, in exchange for dismissal of the other count. The trial court accepted the plea and made a finding of guilt. After reviewing a presentence-investigation report, the trial court sentenced him to 14 months in prison. Allen timely appealed, advancing three assignments of error.

## II. Analysis

{¶ 9} The first assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED DEFENDANT'S MOTION TO SUPPRESS STATING THAT TROOPER BAUMGARTNER HAD REASONABLE ARTICULABLE SUSPICION OF AN OVI VIOLATION THAT JUSTIFIED ADMINISTRATION OF FIELD SOBRIETY TESTS.

{¶ 10} Allen first contends Baumgartner lacked reasonable, articulable suspicion of an OVI violation to justify asking him to perform field-sobriety tests. Allen contends that when the trooper initiated a traffic stop for speeding, he immediately stopped, lowered his side window, turned off his radio, and produced his driver's license. Allen asserts that his speech

was clear, that he was responsive to the trooper's directives, and that he did not fumble with his license or other documents. Allen also notes that the trooper detected only a mild odor of alcohol during their initial interaction. He stresses too that Baumgartner initially intended only to write a speeding ticket. Allen argues that his "de minimis" traffic violation and the trooper's detection of a mild odor of alcohol did not justify prolonging the stop to request field-sobriety testing.

{¶ 11} Upon review, we find Allen's argument to be unpersuasive. He acknowledges that Baumgartner lawfully stopped him for speeding. The trooper detected him driving 71 miles per hour in a 45-mile-per-hour zone. This court has recognized that speeding can be an indicator of intoxication and that driving 16 miles over the speed limit is not a de minimis traffic violation. *See State v. Howard*, 2008-Ohio-2241, ¶ 14 (2d Dist.). Here, Allen was clocked driving 26 miles per hour over the speed limit. Baumgartner also observed him make a "wide radius" turn from State Route 72 onto the Interstate 70 ramp. Our review of the trooper's cruiser camera video confirms this observation. Allen swung his vehicle particularly wide when entering the on-ramp.

{¶ 12} Allen also concedes that Baumgartner detected a mild odor of alcohol upon approaching the stopped vehicle and initially interacting with him. The trooper then obtained Allen's license and went to his cruiser to run a computer check. After doing so, he returned to the stopped vehicle and interacted with Allen a second time. During this encounter, Baumgartner detected a strong odor of alcohol coming from inside the vehicle when Allen turned to face him. At that point, the trooper decided to ask Allen to step out of the vehicle. Although Baumgartner intended to request field-sobriety tests, he was allowed to order Allen out of the vehicle, with or without suspicion of an OVI offense, pending completion of the traffic stop.

**{¶ 13}** "[M]erely because an officer wants to perform field sobriety tests (that are allegedly premature) and that is why he asked someone to exit the vehicle, this does not invalidate the request to exit the vehicle because a request to exit a vehicle during a traffic stop is not subject to constitutional inquiry; it is merely an acceptable continuation of the original traffic stop." *State v. Koczwara*, 2014-Ohio-1946, ¶ 23 (7th Dist.); *see also State v. Sarno*, 2013-Ohio-5058, ¶ 20 (2d Dist.) (reasoning that because no justification is required to order a driver out of a vehicle during a traffic stop, the proffer of a justification "does not render the order unlawful if the proffered additional justification is found to lack a factual basis").

**{¶ 14}** Here, Baumgartner observed Allen take two steps to the side, appearing to stagger or stumble slightly after he exited his vehicle. Allen admitted to the trooper that he had consumed some alcohol the previous night. Baumgartner also observed that Allen had "glassy and bloodshot" eyes. At that point, the trooper asked him to submit to field-sobriety tests, which he refused to perform.

**{¶ 15}** To justify further detention associated with field-sobriety testing, an officer must have reasonable, articulable suspicion that a driver is under the influence of alcohol. *State v. Turney*, 2020-Ohio-4148, ¶ 14 (2d Dist.). That determination is based on the totality of the circumstances viewed through the eyes of a reasonable officer on the scene. *Id.* Although Allen refused to participate in field-sobriety tests, we nevertheless will consider whether Baumgartner lawfully attempted to extend the traffic stop by asking him to perform them. We will address this issue because Allen's refusal to perform the tests in response to the trooper's inquiry itself was relevant to the existence of probable cause to arrest him for driving under the influence. *See, e.g.*, *State v. Wood*, 2023-Ohio-3735, ¶ 18 (2d Dist.) ("[I]t is well established in Ohio that a refusal to submit to field sobriety tests is a factor that may

be considered in determining the existence of probable cause in an arrest for driving under the influence of alcohol.").

{¶ 16} Based on the totality of the circumstances, we believe Baumgartner did possess reasonable, articulable suspicion that Allen was under the influence of alcohol when the trooper requested field-sobriety tests. As set forth above, he observed Allen driving 71 miles per hour in a 45-mile-per-hour zone. After initiating a traffic stop, he also saw Allen make an unusually wide turn onto the Interstate 70 ramp. Upon approaching Allen's stopped vehicle, the trooper detected a mild odor of alcohol. After running Allen's driver's license and interacting with Allen a second time, the trooper detected a strong odor of alcohol when Allen turned toward him. Allen then took two awkward steps to the side after exiting his vehicle. He admitted consuming some alcohol the previous night, and Baumgartner noticed that he had "glassy and bloodshot" eyes.

{¶ 17} In our view, the foregoing circumstances were more than adequate to justify the trooper's request for field-sobriety testing.[1] Although Allen's assignment of error does not specifically raise the issue, we also find that the same circumstances gave Baumgartner probable cause to arrest Allen for driving under the influence of alcohol after he refused to perform field-sobriety tests. Accordingly, the first assignment of error is overruled.

---

[1] In an impaired-driver report that Baumgartner completed after Allen's arrest, the trooper noted numerous additional indicia of intoxication. Among other things, the report indicated that Allen had been swerving and that he had fumbled with his driver's license or registration. It also stated that Allen had slurred speech, that he had difficulty exiting his vehicle, that he repeated questions, that he was slow to respond, that he provided incorrect answers, that he made unusual statements, that he forgot to produce his driver's license and registration, and that he showed angry or unusual reactions. On cross-examination at the suppression hearing, Baumgartner conceded that his body camera and cruiser camera footage did not appear to support many of these assertions. Having reviewed that footage, we agree that these additional indicia of intoxication are not apparent. Nevertheless, based on the reasoning set forth above, we find that sufficient indicia of intoxication did exist to justify Baumgartner's request for field-sobriety tests.

{¶ 18} The second assignment of error states:

THE TEST OF DEFENDANT'S ALCOHOL LEVEL WAS NOT GIVEN VOLUNTARILY AND THE TROOPER DID NOT COMPLY WITH O.R.C. 4511.191(A)(5)(a) WHEN REQUESTING MR. ALLEN SUBMIT TO THE TEST.

{¶ 19} Allen contends the trial court should have suppressed the results of his breathalyzer test because he involuntarily consented to it. He claims Baumgartner falsely told him he was unable to refuse the test. Therefore, he argues that his participation was coerced, rendering the results inadmissible under the Fourth Amendment. In connection with his argument, Allen cites R.C. 4511.191(A)(5)(a). Under the statute, he argues that the trooper should have asked him to submit to a breath test. If he refused, he contends the statute then would have authorized Baumgartner to employ whatever reasonable means were necessary to obtain a chemical test of his blood.

{¶ 20} Upon review, we see no grounds for suppression based on Baumgartner's statement that Allen could not refuse the breathalyzer test. As a practical matter, of course, the trooper could not physically compel Allen to breathe into the machine. On the other hand, the law is clear that Allen had no legal right to refuse the test. Indeed, the Ohio Supreme Court has held that a person "accused of intoxication has no constitutional right to refuse to take a reasonably reliable chemical test for intoxication." *City of Westerville v. Cunningham*, 15 Ohio St.2d 121, paragraph two of the syllabus (1968); *see also State v. Hoover*, 2009-Ohio-4993, ¶ 19 (citing *Schmerber v. California*, 384 U.S. 757 (1966), and reasoning that "if an officer has probable cause to arrest a driver for DUI, the result of an analysis of a blood sample taken over the driver's objection and without consent is admissible in evidence, even if no warrant had been obtained").

{¶ 21} Given that Allen had no constitutional right to refuse the breathalyzer test, the validity of his consent was legally immaterial for purposes of his suppression motion. We note too that under Ohio's implied-consent statute, R.C. 4511.191(A)(2), Allen was deemed to have given his consent to a chemical test of his blood, breath, or urine upon his arrest for driving under the influence of alcohol. The portion of the statute he cites, R.C. 4511.191(A)(5)(a), provides that upon the arrest of a person in Allen's situation "the law enforcement officer shall request the person to submit, *and the person shall submit*, to a chemical test or tests of the person's whole blood, blood serum or plasma, breath, oral fluid, or urine[.]" (Emphasis added.) Thus, even under R.C. 4511.191(A)(5)(a), upon which Allen relies, he possessed no legal right to refuse a chemical test to determine alcohol content. As Allen himself notes, if he had refused the breathalyzer test, Baumgartner would have been entitled to take all reasonable steps to ensure that he submitted to a blood-alcohol test. *See* R.C. 4511.191(A)(5)(b). Given that Baumgartner possessed probable cause to arrest Allen for driving under the influence of alcohol, it follows that the trooper would have been entitled to a warrant for a blood test if necessary.

{¶ 22} For the foregoing reasons, we see no grounds for suppression based on Baumgartner's statement to Allen about being required to take a breathalyzer test. The second assignment of error is overruled.

{¶ 23} The third assignment of error states:

MR. ALLEN WAS DENIED HIS RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, SECTION 10 AND ARTICLE I OF THE OHIO CONSTITUTION AND O.R.C. 2935.20.

{¶ 24} Allen contends he made multiple requests to speak to an attorney before undergoing the breathalyzer test. Allen argues that Baumgartner denied the requests

because he did not want Allen to learn that he could refuse a breathalyzer test and force the trooper to obtain a blood-alcohol test instead. He claims Baumgartner's refusal to allow him to speak to an attorney violated his right to counsel under the United States and Ohio Constitutions as well as his statutory right to counsel under R.C. 2935.20.

{¶ 25} Upon review, we find Allen's argument to be unpersuasive. There is "no Fifth Amendment right to consult with an attorney prior to submitting to a breathalyzer test." (Citations omitted.) *State v. Downing*, 2002 WL 441353, *2 (2d Dist. Mar. 22, 2002). A defendant also has no Sixth Amendment right to counsel because "[a] chemical test for alcohol is merely a preparatory stage of the proceeding and is not considered a critical stage where the Sixth Amendment right to counsel would attach." (Citations omitted.) *Id.* at *3. We see no principled basis for interpreting the Ohio Constitution differently. *See, e.g., State v. Henson*, 2020-Ohio-4019, ¶ 32 (3d Dist.) (stating that "under Ohio law there is no constitutional right to counsel prior to taking a breath test").

{¶ 26} We recognize, however, that R.C 2930.20 creates a statutory right to consult with counsel after arrest. "The courts have construed this statute to require the police to allow consultation with counsel prior to administering the breathalyzer; but police are not required to await arrival of counsel before it is administered." (Citations omitted.) *Downing* at *3. Regardless, "because this right to counsel is statutory and not constitutional, . . . the exclusionary rule does not apply." (Citation omitted.) *Id.* Therefore, "even if a violation of R.C. 2935.20 had occurred and the police did not permit consultation with counsel, the exclusionary rule would not provide for suppression of the evidence obtained after the violation." *Id.*

{¶ 27} In short, Allen possessed no federal or state constitutional right to consult with an attorney prior to his breathalyzer test, and R.C. 2930.20 provided no basis for

suppression. Accordingly, the third assignment of error is overruled.

## III. Conclusion

{¶ 28} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.