OPINION *Page 2 
{¶ 1} Defendant-Appellant, Michael Bissaillon, appeals from the judgment of the Municipal Court of Fairborn, Ohio, denying his motion to suppress evidence of breath testing for failing to comply with regulatory guidelines.
 {¶ 2} The record indicates that Officer Todd Suchy of the Beavercreek Police Department was dispatched to the scene of a traffic accident at approximately 10:15 p.m. on March 17, 2006. Officer Suchy arrived at the scene five minutes later. Also present were Sara Stoner, Drew Wagner, and Bissaillon's father. Ms. Stoner told Officer Suchy that Bissaillon had been following closely behind her and Mr. Wagner, so they turned down Vayview Drive in Beavercreek and pulled over in front of Ms. Stoner's house to let him pass. Bissaillon rear-ended their car shortly after they pulled over. Ms. Stoner testified that she had an opportunity to speak to Bissaillon when they got out of their cars. She stated that Bissaillon slurred his speech, looked confused, and smelled like beer. Furthermore, she testified that Bissaillon told her he had been drinking.
 {¶ 3} Upon Officer Suchy's request, Bissaillon's father escorted Bissaillon from inside the house. Officer Suchy testified that Bissaillon appeared to be under the influence — his speech was slurred, his breath smelled of alcohol, and his reactions were slow. According to Officer Suchy, Bissaillon agreed to take field sobriety tests. Officer Suchy first administered the horizontal gaze nystagmus test. The results of this test, however, were suppressed for failure to substantially comply with the National Highway Traffic Safety Administration Manual. Next, Officer Suchy conducted the one-leg stand test. He testified that Bissaillon swayed while balancing, used his arms to balance himself, and put his foot down more than three times. To prevent Bissaillon from *Page 3 
injuring himself, Officer Suchy stopped the test after assigning Bissaillon four clues for his performance. Based on the field sobriety tests, Officer Suchy placed Bissaillon under arrest for Operating a Vehicle under the Influence. Bissaillon was taken to the police station, where he consented to a breath test. Officer Brian Cline administered the test in the presence of Officer Suchy. Officer Suchy testified that both he and Officer Cline are senior operators.[1] The results of the test indicated a concentration of .247 grams of alcohol per two hundred ten liters of breath.
 {¶ 4} Bissaillon was charged with OVI — Breath Test .17 g or more, OVI-Underlimit or Refusal, and Assured Clear Distance. On May 26, 2006, Bissaillon filed a motion to suppress evidence of the "stop," the field sobriety tests, and the breath test. A hearing on the motion was held before a magistrate on May 28, 2006. In light of the evidence presented at the hearing, the magistrate concluded that only the results of the horizontal gaze nystagmus test should be suppressed; consequently, all other allegations made by Bissaillon were overruled. The trial court filed its Decision and Entry adopting the magistrate's decision on October 27, 2006. Subsequently, Bissaillon pled no contest to the per se charge of driving with a prohibited concentration. The other two charges were dismissed. The court entered a finding of guilty to the no contest plea. *Page 4 
 {¶ 5} Bissaillon appeals the denial of his motion to suppress and raises the following assignments of error:
 {¶ 6} I. "The trial court erred in overruling the suppression motion because the State failed to meet its burden of proving that it substantially complied with state regulations pertaining to maintenance of the BAC Datamaster."
 {¶ 7} II. "The results of the breathalyzer should also have been suppressed because the State failed to enter a certified copy of those results into evidence."
 {¶ 8} This court has recognized that the trial court serves as the trier of fact at a suppression hearing; thus, it must judge the credibility of the witnesses and the weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. "In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts found." State v. Hurt, Montgomery App. No. 21009,2006-Ohio-990, at 1J16 (citations omitted). Hence, this determination requires an independent review, without deference to the trial court's conclusions. State v. Petitjean (2000), 140 Ohio App.3d 517, 533,748 N.E.2d 133 (citations omitted).
 {¶ 9} Upon review of the record, we find that the trial court erred in overruling Bissaillon's motion to suppress evidence of his breath test results. The State failed to satisfy its burden of demonstrating substantial compliance with Ohio Department of Health ("ODH") regulations pertaining to calibration of the Breathalyzer BAC and proper utilization of the instrument check solution. Therefore, the judgment of the trial court will be reversed, and the case will be remanded for further proceedings. *Page 5 
 I {¶ 10} In his first assignment of error, Bissaillon contends that the State failed to prove that it substantially complied with the ODH regulations relating to maintenance of the Breathalyzer BAC. Specifically, Bissaillon argues that the breath machine was not properly calibrated; the instrument check solution was not used within three months after its date of first use nor properly refrigerated; and the State did not verify the radio frequency interference ("RFI") detector.
 {¶ 11} When the admissibility of a breath test is challenged in a motion to suppress, the first issue that must be considered is whether the motion was stated with sufficient particularity to put the prosecutor and the court on notice of the basis of the challenge. SeeState v. Shindler (1994), 70 Ohio St.3d 54, 58, 636 N.E.2d 319. Crim.R. 47 provides that a motion "shall state with particularity the grounds upon which it is made * * * ." In Shindler, the Ohio Supreme Court found that a motion to suppress drafted in the same manner and language as a sample motion that appeared in Painter Looker, Ohio Driving Under the Influence Law (1999) 136-37, Section 11.16, satisfied the requirements of Crim.R. 47. Id. at 57. The defendant's motion, for example, provided that "[t]he machine or instrument analyzing defendant's alcohol level was not in proper working order and not calibrated in accordance within the time and manner required by O.A.C. 3701-53-04." Id. at 55. According to the court, this type of motion sufficiently stated the legal and factual bases with the necessary particularity to put the prosecutor and the court on notice of the issues to be decided. Id. at 57-58. In line with Shindler, this court has held that "technical challenges to breath tests are sufficient even *Page 6 
though no case-specific allegations are made." State v. Williams (Apr. 24, 1998), Montgomery App. No. 16554, 1998 WL 214595, at *2, citingState v. Palmer (Mar. 8, 1995), Clark App. No. 3085,1995 WL 96859.
 {¶ 12} Once it is established that the defendant has set forth a sufficient basis for a motion to suppress, the burden shifts to the State to show that it substantially complied with the ODH regulations involved. State v. Plummer (1986), 22 Ohio St.3d 292, 490 N.E.2d 902, syllabus. The burden to establish substantial compliance, however, only extends to the level with which the defendant takes issue with the legality of the test. State v. Johnson (2000), 137 Ohio App.3d 847, 851,739 N.E.2d 1249. When the defendant's motion to suppress merely raises a generalized claim of inadmissibility and identifies the section(s) of the Administrative Code implicated in that claim, the burden on the State is fairly slight. Williams, supra, at *3. See, also, State v.Embry, Warren App. No. CA2003-11-110, 2004-Ohio-6324, at ]}24 (simply reiterating Administrative Code provisions creates a burden on the State to respond only in general to the issues raised). To satisfy its burden, we have found that the State "need only offer prima facie proof that each element of the approved method was performed in a manner sufficient to render the test result evidence reliable." Williams, supra. Thus, the State must demonstrate compliance only in general terms when the motion to suppress raises issues in general terms. State v. Lampe, Montgomery App. No. 20499, 2004-Ohio-5832, at ¶ 9 (citation omitted). No specific evidence is required unless the defendant raises a specific issue in his or her motion. Johnson, 137 Ohio App.3d at 851.
 {¶ 13} Here, Bissaillon raises several issues regarding the State's compliance *Page 7 
with the ODH regulations relating to maintenance of the Breathalyzer BAC. Initially, we note that Bissaillon has waived his argument that the State did not sufficiently verify a RFI check pursuant to Ohio Adm. Code3701-53-04. At the motion hearing, Bissaillon's counsel stated the following when asked whether any issues had been withdrawn: "RFI, we will withdraw, you Honor." (Tr. at 7.) Thus, any argument advanced by Bissaillon in his brief with respect to the RFI test records is waived for the purposes of this appeal. See McGovern Builders, Inc. v.Davis (1983), 12 Ohio App.3d 153, 156, 468 N.E.2d 90.
 {¶ 14} Bissaillon contends that the breath machine was not properly calibrated in accordance with Ohio Adm. Code 3701-53-04 because "the alcohol based solution was not used within three (3) months of its first utilization as required by OAC 3701-53-04(A)(1) * * * [and] the solution was not properly refrigerated."[2] (Def.'s Mot. to Suppress at 2.) Ohio Adm. Code 3701-53-04(C) provides that "[a]n instrument check solution shall not be used more than three months after its date of first use, or after the manufacturer's expiration date (one year after manufacture) whichever comes first. After first use, instrument check solutions shall be kept under refrigeration when not being used."
 {¶ 15} We find that the State was put on notice by Bissaillon's motion that he intended to challenge the validity of the instrument check solution. However, the burden on the State to show substantial compliance remained general. As stated by the Twelfth District, "in order to require the state to respond specifically and particularly to issues *Page 8 
raised in a motion, an accused must raise issues that can be supported by facts, either known or discovered, that are specific to the issues raised. Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight." Embry, 2004-Ohio-6324, at ?29. Thus, when a motion to suppress fails to allege the fact-specific way in which a violation occurred, the State meets its burden by offering basic testimony from an officer responsible for complying with the ODH regulations. See Johnson, 137 Ohio App.3d at 854.
 {¶ 16} At the hearing, Officer Suchy testified that it is the usual practice and procedure of the Beavercreek Police Department to discard the instrument check solutions at three months from the dates they are opened. Furthermore, he provided that the department has a policy in which the Breathalyzer BAC is calibrated every six days, as opposed to every seven days under Ohio Adm. Code 3701-53-04(A), by an assigned officer to ensure that the department complies with ODH standards. A log book is kept with each instrument containing the face sheets of 25 instrument checks or subject tests. According to Officer Suchy, one can verify the last instrument check by referring to the log books. Moreover, he testified that a breath machine not in compliance with the ODH regulations would be taken out of service.
 {¶ 17} Officer Suchy's testimony, however, contained no indication of personal observations of compliance with ODH regulations beyond mere knowledge of routine practices. Although the State's burden in this instance is general and slight, a common factor in Ohio cases involving officer testimony has been first-hand knowledge of *Page 9 
compliance with ODH regulations at the time of the alcohol and/or drug testing. See State v. Mai, Greene App. No. 2005-CA-115, 2006-Ohio-1430, at¶ 20-21 (finding the officer's testimony sufficient to demonstrate substantial compliance with Ohio Adm. Code 3701-53-04, where the officer testified that he followed the departmental practice of checking log books for dates of calibration before administering the breath test to defendant); Lampe, 2004-Ohio-5832, at ¶ 13 (finding the officer's testimony of performing an interval test to assure the proper operation of the BAC instrument and checking the log book for the machine's operating status prior to administering defendant's breath test was sufficient evidence of substantial general compliance with testing requirements); Embry, 2004-Ohio-6324, at ¶ 16-17, 32 (finding the defendant's general allegations of noncompliance with ODH testing regulations sufficiently addressed by the officers' testimony providing that they followed the Breathalyzer machine's operational checklist during a calibration check five days prior to testing the defendant, in addition to testimony regarding routine maintenance of log books, records and instrument check solutions); Johnson, 137 Ohio App.3d at 852
(finding testimony that the officer performed calibration tests before and after defendant's breath test, as well as testimony of following the breath-testing device's checklist, demonstrated substantial compliance with ODH regulations).
 {¶ 18} In the present action, the following exchange took place at the motion hearing between Bissaillon's attorney and Officer Suchy concerning the officer's personal knowledge of compliance with ODH regulations:
 {¶ 19} "Q And do you know who calibrated the breath machine, the last calibration prior to Michael taking the breath test? *Page 10 
 {¶ 20} "A No, I do not.
 {¶ 21} "Q Do you know who calibrated the machine the calibration after he took his test?
 {¶ 22} "A No, I do not. We have all those records at the police department. I didn't know that I needed them today." (Tr. at 34.)
 {¶ 23} "* * *
 {¶ 24} "Q Do you know on what date or at what time the last instrument check had been performed prior to Mr. Bissaillon taking his breath test?
 {¶ 25} "A The instrument calibration check?
 {¶ 26} "Q Yes.
 {¶ 27} "A I do not know. Like I said, we maintain a six-day period between tests, so, that way, we never go over or even get to the 192 hours.
 {¶ 28} "Q But you don't personally have any knowledge of on what day or at what time the last calibration would have been performed?
 {¶ 29} "A No.
 {¶ 30} "Q Or, likewise, the subsequent?
 {¶ 31} "A Correct, I do not know." (Tr. at 34-35.)
 {¶ 32} "* * *
 {¶ 33} "Q So, as far as that goes, do you know what the result was for the calibration, the last calibration that was done to the machine prior to Michael taking his breath test?
 {¶ 34} "A Prior to, no. If it was out of compliance, the machine would have been taken out of service. *Page 11 
 {¶ 35} "Q But you don't, again, you don't have any personal knowledge yourself?
 {¶ 36} "A No.
 {¶ 37} "Q And, likewise, for the subsequent test?
 {¶ 38} "A Correct.
 {¶ 39} "Q And do you know when the solution that was used to calibrate the machine either immediately prior to or following his breath test, you don't know the solution's date of first use, do you?
 {¶ 40} "A No.
 {¶ 41} "Q Or the expiration date for that solution?
 {¶ 42} "A No, ma'am.
 {¶ 43} "Q Do you know whether the solution that was used was kept under refrigeration after being used?
 {¶ 44} "A Yes, ma'am.
 {¶ 45} "Q Did you personally place it in the refrigerator?
 {¶ 46} "A No, ma'am." (Tr. at 36.)
 {¶ 47} As this court has stated, the State's burden in defending general challenges to ODH alcohol testing regulations is slight.Williams, supra, at *3. However, the prosecutor must still prove that the officer performed the test or instrument check in a manner that sufficiently renders the result evidence reliable. Id. Testifying as to firsthand knowledge that the instrument check was performed according to ODH standards prior to administering the breath test would satisfy this general burden. The State, in this case, has failed to meet this minimal standard. Office Suchy's testimony *Page 12 
demonstrates little more than awareness of departmental procedures involving breath tests and instrument checks. It does not sufficiently show that those procedures were substantially complied with in this case. Thus, we find that the State has not met its burden to prove that the alcohol based solution was used within three (3) months of its date of first use or that the solution was properly refrigerated. Accordingly, Bissaillon's first assignment of error is sustained.
 II {¶ 48} In his second assignment of error, Bissaillon argues that the results of his breath test should have been suppressed because the State failed to present a certified copy of his test results into evidence. Specifically, he relies on State v. Bowers (2005), 161 Ohio App.3d 149,2005-Ohio-2593, 829 N.E.2d 755, for the proposition that not presenting any documentary evidence on an issue for which the State has the burden of proof constitutes reversible error. However, in light of our disposition of Bissaillon's first assignment of error, this issue has been rendered moot.
 {¶ 49} In conclusion, we find that the trial court erred in overruling Bissaillon's motion to suppress evidence of his breath test, where the State failed to prove that it substantially complied with ODH regulations regarding the maintenance of the Breathalyzer BAC. Having sustained Bissaillon's first assignment of error, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. *Page 13 
FAIN and GRADY, JJ., concur.
[1] Ohio Administrative Code § 3701-53-07(D) provides that "[a]n individual meets the qualifications for a senior operator's permit by: (1) Being a high school graduate or having passed the `General Education Development Test' and (2) Having demonstrated that he or she can properly care for, maintain, perform instrument checks upon and operate the evidential breath testing instrument by having successfully completed a basic senior operator, upgrade or conversion training course for the type of approved evidential breath testing instrument for which he or she seeks a permit.
[2] The correct section of the Ohio Administrative Code is 3701-53-04(C), effective 9-30-02. *Page 1