[Cite as *State v. Hill*, 2014-Ohio-1447.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellee                      :               C.A. CASE NO.     25717

v.                                                       :               T.C. NO.     11CR3522

TIMOTHY J. HILL                              :               (Criminal appeal from
                                                                          Common Pleas Court)

    Defendant-Appellant                    :

                                                         :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the    4th    day of     April    , 2014.

· · · · · · · · · ·

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BEN SWIFT, Atty. Reg. No. 0065745, P. O. Box 49637, Dayton, Ohio 45449
    Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

    **{¶ 1}** Defendant-appellant Timothy J. Hill appeals from his conviction and sentence for one count of aggravated vehicular homicide, in violation of R.C.

2903.06(A)(1)(a), a felony of the second degree; one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a felony of the third degree; one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a), a felony of the third degree; one count of vehicular assault, in violation of R.C. 2903.08(A)(2)(b), a felony of the fourth degree; and one count of OVI, in violation of R.C. 4511.19(A)(1)(a)/4511.19(G)(1)(a), a misdemeanor of the first degree. Hill filed a timely notice of appeal with this Court on April 10, 2013.

{¶ 2} The incident which forms the basis for the instant appeal occurred on June 3, 2011, at approximately 5:00 p.m., when Hill was driving alone near the intersection of Clyo Road and Spring Valley Road in Washington Township, Ohio. Thereupon, Hill was involved in a head-on collision with another vehicle containing two elderly female occupants.[1] As a result of the accident, Hill was trapped in his vehicle for approximately forty minutes until rescue crews and paramedics were able to safely remove him. After being freed from the vehicle, Hill was transported to Miami Valley Hospital by a Careflight helicopter. Deputy Amber Haas testified that a baggie of marijuana, a glass pipe, and syringes were found in Hill's vehicle during an inventory search after the accident.

{¶ 3} While he was being treated at the hospital, Hill consented orally and in writing to having his blood drawn for purposes of alcohol and drug testing. Hill's blood was found to contain legally prohibited levels of narcotics including THC, morphine, and

---

[1]One of the female occupants, eighty-three year old Helen Dodson, later died from the injuries she sustained in the accident. The other occupant, eighty-four year old Elizabeth Wahl, survived the accident but sustained serious injuries.

benzodiazepines.

{¶ 4}   Hill was subsequently indicted on February 27, 2012, for one count of aggravated vehicular homicide, a felony of the second degree; one count of aggravated vehicular homicide, a felony of the third degree; one count of aggravated vehicular assault, a felony of the third degree; one count of vehicular assault, a felony of the fourth degree; and one count of OVI, a misdemeanor of the first degree.   At his arraignment on March 1, 2012, Hill entered a plea of not guilty to the charged offenses.

{¶ 5}   On April 2, 2012, Hill filed a motion to suppress in which he argued that the results of his blood test should be excluded from evidence because he was unable to give informed consent due to the recent trauma he suffered in the car accident and because he was under the influence of prescribed medication.   A hearing was held on Hill's motion to suppress on August 10, 2012.   On February 1, 2013, the trial court issued a decision overruling Hill's motion to suppress.   On the same day, Hill pled no contest to all of the offenses charged in the indictment.   On March 11, 2013, the trial court sentenced Hill to an aggregate term of four years in prison.

{¶ 6}   It is from this judgment that Hill now appeals.

{¶ 7}   Hill's sole assignment of error is as follows:

{¶ 8}   "[THE] TRIAL COURT ERRED IN OVERRULING HILL'S MOTION TO SUPPRESS BLOOD TEST REMOVAL/RESULTS BECAUSE WARRANTLESS BLOOD DRAW WAS TAKEN WITHOUT VALID CONSENT AND IN VIOLATION OF DEFENDANT'S FOURTH, FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO THE U.S. CONSTITUTION AND COMPARABLE PORTIONS OF THE OHIO

CONSTITUTION."

{¶ 9} In his sole assignment, Hill contends that the trial court erred when it overruled his motion to suppress. Specifically, Hill argues that the State failed to establish through the testimony of its witnesses that his consent to the blood test was valid and was not the result of coercion by Deputy Haas.

{¶ 10} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

{¶ 11} The Fourth Amendment to the U.S. Constitution and Section 14, Article I of the Ohio Constitution prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, the Fourth Amendment protects persons against unjustified or improper intrusions into a person's privacy, including bodily intrusion. See *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

{¶ 12} It is well established that "searches outside the judicial process, without

prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well delineated exceptions." *Katz v. U.S.,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The U.S. Supreme Court has recognized that the Fourth Amendment's "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985). However, a suspect, upon request of a police officer, may voluntarily consent to submit to a blood test to determine the concentration of alcohol and/or drugs in his or her blood. Such consent constitutes actual consent. See *Fairfield v. Regner*, 23 Ohio App.3d 79, 491 N.E.2d 333 (12th Dist.1985). Consent may be oral or written. *State v. McLemore*, 197 Ohio App.3d 726, 736, 2012-Ohio-521, 968 N.E.2d 612 (2d Dist.), citing Katz, *Ohio Arrest, Search and Seizure*, Section 19:1 (2008). While not necessary after oral consent is given, a written consent is strong evidence of a defendant's willingness to allow a search. *Id*.

{¶ 13} Marsha Roemer, the nurse on the Care Flight helicopter that transported Hill to the hospital, testified that the appellant was alert and conscious during the flight and able to answer all of the questions she asked him regarding his condition. Roemer testified that Hill scored a fourteen or fifteen on the Glasgow Coma Scale (GCS), a test used to evaluate a patient's level of consciousness. A perfect score on the GCS is a fifteen. Roemer further testified that no medications were administered to Hill during the flight from the scene of the accident to the hospital, and he did not exhibit any signs of head trauma. Roemer testified that Hill's only complaint was that his shin hurt.

{¶ 14}   Upon contact at the hospital, Deputy Haas testified that Hill was lying down in a hospital bed unrestrained, and no police officers were guarding the room.   Deputy Haas testified that she had been ordered by her supervisor to go to the hospital in order to secure Hill's consent for a blood draw.   Deputy Haas testified that Hill had no visible head injuries and did not appear to be under the influence of any drugs or alcohol.

{¶ 15}   Deputy Haas testified that she asked Hill for his personal information including his social security number, date of birth, full name, and address.   Hill answered all of the background questions accurately.   Deputy Haas testified that while Hill had seemed slightly groggy at the beginning of the interview, he became more alert and "peppy" as the questioning progressed.   Deputy Haas also testified that she read the "consent to search" form to Hill which clearly advised him of his right to refuse to give his consent to the blood draw.   Although the form's pre-printed description of the subject of the search indicated that it was for a "premises" and/or a "vehicle," Deputy Haas wrote "BLOOD FROM SELF" as the objective of Hill's consent on the form.   Deputy Haas also explained to Hill that her purpose was to secure a sample of his blood and that he did have to consent to her request. Deputy Haas testified that if Hill had appeared to be incapable of consenting to the blood draw, she would not have proceeded, and instead, would have immediately called her supervisor and informed him of the situation.

{¶ 16}   Hill verbally agreed to the blood draw and signed the "consent to search" form.   Deputy Haas testified that no threats or coercion were used to secure Hill's consent. Hill was not under arrest nor did she display her firearm while she was speaking with Hill. After Hill signed the form, Deputy Haas left the room for approximately fifteen minutes in order to secure a phlebotomist to perform the blood draw.   Deputy Haas described Hill as

cooperative during the initial questioning and the actual procedure.

{¶ 17} Michelle Spencer, a nurse who was present during Hill's questioning, testified that had she witnessed Deputy Haas behaving in a hostile or coercive manner towards the appellant, she would have instructed the deputy to leave the room. Spencer further testified that Hill appeared to be awake, alert, coherent, and oriented to his surroundings. Spencer testified that no narcotic medication was administered to Hill while he was in the hospital room.

{¶ 18} Hill argues that because of the trauma he suffered in the car accident, he was unable to voluntarily consent to the blood draw. However, the findings made by the trial court are supported by the record. Hill was alert, coherent, and cooperative when he gave his consent to Deputy Haas to perform the blood draw. There is no evidence that Hill consented because he was coerced nor under duress. The testimony provided by Deputy Haas, Roemer, and Spencer clearly establish that Hill knowingly, intelligently, and voluntarily consented to the blood draw. We also note that while the consent form used was not specifically drafted to authorize a blood draw, Deputy Haas testified that she explained to Hill that the purpose of the form was to secure his consent for the blood draw and she wrote "BLOOD FROM SELF" as the objective of Hill's consent on the form. The trial court found Deputy Haas' unrefuted testimony regarding the consent form to be credible, and we find no basis to disturb the court's finding on appeal. Accordingly, the trial court did not err when it overruled Hill's motion to suppress the results of the blood draw.

{¶ 19} Hill's sole assignment of error is overruled.

{¶ 20} Hill's sole assignment of error having been overruled, the judgment of the

trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Michele D. Phipps
Ben Swift
Hon. Steven K. Dankof