[Cite as *State v. Ivkovich*, 2018-Ohio-609.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27465 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-2577 |
| | : | |
| PAUL P. IVKOVICH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of February, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BROCK SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Paul P. Ivkovich, appeals from his convictions for two counts of aggravated vehicular homicide under R.C. 2903.06(A). In four assignments of error, Ivkovich argues that the trial court erred by overruling his motion to suppress the results of a chemical analysis of his blood; by failing to comply fully with Crim.R. 11(C) when it accepted his pleas of no contest; and by improperly sentencing him to a term of imprisonment greater than the mandatory minimum in reliance on findings of fact that were irrelevant or unsupported by the record. We find that the trial court did not err, and we therefore affirm.

## I. Facts and Procedural History

**{¶ 2}** Early in the morning of April 30, 2015, Ivkovich was driving in the vicinity of the intersection of East Third Street and McDonough Street in Dayton, accompanied by Sharon M. Crawford. *See* Tr. of Proceedings 185-186; Appellant's Br. 3. At approximately 2:25 a.m., Ivkovich's vehicle collided with one of the pillars supporting the railroad overpass spanning Third Street. *See* Tr. of Proceedings 185-186; Pl.'s Mem. in Opp'n to Def.'s Mot. to Suppress 3, Apr. 18, 2016; *see also* Def's Mot. to Suppress 3, Nov. 30, 2015. Ivkovich and Crawford were taken to Miami Valley Hospital, where Crawford was pronounced dead. Appellant's Br. 3; Appellee's Br. 2.

**{¶ 3}** A uniformed officer with the Dayton Police Department reported to the hospital's trauma center between 2:45 and 3:00 a.m. to speak with Ivkovich. Tr. of Proceedings 64-65. In response to the officer's inquiry, Ivkovich acknowledged that he was driving when his vehicle struck the pillar and told the officer that he and Crawford had left a bar shortly beforehand. *Id.* at 68. Prompted by an odor of alcohol, the officer

asked Ivkovich whether he had been drinking at the bar. Ivkovich answered that he had had six or seven beers and two or three shots, and the officer requested Ivkovich's consent to a blood draw for toxicological analysis. *Id.* at 68-72. Ivkovich consented. *Id.* at 71-72. The analysis of Ivkovich's blood revealed an alcohol content well in excess of the legal limit for the operator of a motor vehicle. *Id.* at 165-168 and 235; R.C. 4511.19(A)(1)(b) and (f).

{¶ 4} On October 20, 2015, a Montgomery County grand jury issued a two-count indictment charging Ivkovich with: (1) aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) for causing the death of Sharon Crawford as a proximate result of his operation of a motor vehicle in violation of R.C. 4511.19(A); and (2) aggravated vehicular homicide under R.C. 2903.06(A)(2)(a) for causing Crawford's death by operating a motor vehicle recklessly. Ivkovich appeared for arraignment on November 3, 2015, and pleaded not guilty.

{¶ 5} On November 30, 2015, Ivkovich moved to suppress the results of the analysis of his blood as well as the statements he made while in Miami Valley Hospital. Following a hearing, the court overruled Ivkovich's motion with respect to this evidence in a decision docketed on May 16, 2016, and on December 12, 2016, Ivkovich pleaded no contest to both of the charges set forth in the indictment. The State did not agree to make a sentencing recommendation in exchange for Ivkovich's pleas. Tr. of Proceedings 226.

{¶ 6} At Ivkovich's sentencing hearing on January 17, 2017, the court merged the two counts of the indictment, and the State elected to proceed on Count 1 (aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) for causing the death of another as a

proximate result of the operation of a motor vehicle in violation of R.C. 4511.19(A)). The court ordered that Ivkovich serve a mandatory term of imprisonment of four years and advised him that he would be subject to mandatory post-release control for a period of three years after his release from prison. On January 19, 2017, the court docketed a termination entry, and Ivkovich timely filed a notice of appeal on February 16, 2017.

## II. Analysis

{¶ 7} Ivkovich's first and second assignments of error relate to the trial court's ruling on his motion to suppress.[1] Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." *Burnside*, 2003-Ohio-5372, ¶ 8, citing *Fanning*, 1 Ohio St.3d

---

[1] Ivkovich does not appeal the trial court's decision to admit the statements he made while in Miami Valley Hospital. These statements, standing alone, would seem to have been sufficient to support a conviction under R.C. 2903.06(A)(1)(a) and 4511.19(A)(1)(a), given that Ivkovich admitted that he had consumed six to seven beers plus two to three shots. His challenge to the admission of the analysis of his blood is arguably moot as a result. *See State v. Barger*, 2017-Ohio-4008, ___ N.E.3d ___, ¶ 19, fn.1 (2d Dist.). We have not addressed this issue because it has not been raised or briefed by either of the parties.

19, and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

{¶ 8} For his first assignment of error, Ivkovich contends that:

THE TRIAL COURT ERRED IN DETERMINING THAT THE BLOOD DRAW WAS CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH THE OHIO ADMINISTRATIVE CODE.

{¶ 9} Ivkovich presents a quadripartite argument that the trial court should have suppressed the results of the analysis of his blood. First, he posits that because the State did not establish the expiration date of the test kit used to obtain specimens, it failed to demonstrate that the results of the analysis were reliable. Second, he challenges the authenticity of the specimens introduced into evidence by the State at the hearing on his motion to suppress. Third, he insists the State failed to prove that the analysis of his blood comported with the requirements of Ohio Adm.Code 3701-53-03 and 3701-53-04, and fourth, he maintains similarly that the State failed to demonstrate that it retained the specimens of his blood for one year after completion of testing as required by Ohio Adm.Code 3701-53-06(A).

{¶ 10} Regarding the first part of Ivkovich's argument, when a defendant moves to suppress the results of a blood test "in an aggravated vehicular homicide prosecution that depends upon proof of driving under the influence in violation of R.C. 4511.19(A), the [prosecution] must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Adm.Code Chapter 3701-53 before the test results [may be] admi[tted]." *State v. Bruce*, 2d Dist. Montgomery No. 22612, 2008-Ohio-5514, ¶ 8, citing *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 48. The defendant, however, must " 'state with particularity the legal and factual issues to be resolved.' " *State v. Tyner*, 2d

Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶ 13, quoting *State v. Shindler*, 70 Ohio St.3d 54, 58, 636 N.E.2d 319 (1994); *see also State v. Bissaillon*, 2d Dist. Greene No. 06-CA-130, 2007-Ohio-2349, ¶ 11. If the defendant provides a sufficiently particular statement, then "the burden shifts to the [prosecution] to show that it substantially complied" with the relevant regulations. *Bissaillon*, 2007-Ohio-2349, ¶ 12, citing *State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), syllabus. The weight of the prosecution's "burden to establish substantial compliance," in other words, is directly proportional to the extent of the defendant's specificity; a motion to suppress that raises merely a generalized claim of non-compliance imposes only a "fairly slight" burden on the prosecution. (Citations omitted.) *See id.*

{¶ 11} In his motion to suppress, Ivkovich argued that the "manner of the blood draw, and the handling and [the] testing of the blood, was done in violation of the regulations [appearing in Ohio Adm.Code] 3701-53-01, et seq." Def's Mot. to Suppress 1 and 3. The motion made no mention of the test kit or of the expiration date of any of the kit's components, although during the hearing on the motion, Ivkovich's counsel referred to the kit's expiration date in the following exchange with the phlebotomist who drew Ivkovich's blood:

DEFENSE COUNSEL: This expiration [date] on the [test kit] is a sticker, is that correct?

WITNESS: Correct.

DEFENSE COUNSEL: Is there any way to tell when that was placed there?

WITNESS: I would have no clue.

Tr. of Proceedings 58-59. Ivkovich nevertheless offered no argument related to the test kit's expiration date in his subsequent memoranda in support of suppression, which focused on lack of consent, the mechanics of the blood draw itself, the storage of the samples and unrelated Fourth Amendment issues. *See* Def.'s Post-Hearing Mem. in Supp. of Mot. to Suppress 2-6, Apr. 4, 2016; Def.'s Post-Hearing Reply Mem. in Supp. of Mot. to Suppress 1-2, Apr. 25, 2016. Thus, Ivkovich did not provide the State with notice that he intended to seek suppression of the analysis of his blood based upon the possible expiration of the test kit, and he thereby forfeited this issue for review on appeal. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15; *State v. Tyner*, 2d Dist. Montgomery No. 25405, 2014-Ohio-2809, ¶ 12-16; *State v. Bissaillon*, 2d Dist. Greene No. 06-CA-130, 2007-Ohio-2349, ¶ 11-15.

**{¶ 12}** Even if the issue had been raised in the trial court, Ivkovich suggested only in the most general terms that the test kit might have been expired, meaning that the State would have had only a "fairly slight" burden to "establish substantial compliance" with the applicable regulations. *Bissaillon*, 2007-Ohio-2349, ¶ 12; *see also State v. Johnson*, 137 Ohio App.3d 847, 851-853, 739 N.E.2d 1249 (12th Dist.2000). In this respect, the phlebotomist testified on direct examination that checking the expiration date of a test kit is standard procedure, and when shown the kit he used to obtain a specimen from Ivkovich, he verified that the kit's expiration date had not yet passed at the time he used it. Tr. of Proceedings 19-23 and 29-34. The State accordingly demonstrated that the analysis of Ivkovich's blood substantially complied with regulatory requirements to the extent of the test kit's expiration date.

**{¶ 13}** Regarding the second part of Ivkovich's argument, Ivkovich notes that the

Dayton Police officer tasked with transporting his blood samples from Miami Valley Hospital to the Miami Valley Regional Crime Laboratory made revisions to the documentation attached to the samples. Appellant's Br. 6-7. Ivkovich contends that "[t]hese changes * * * raise significant questions about the authenticity of the * * * blood sample[s]" introduced at the hearing on his motion to suppress. *Id.* at 7. Like the expiration date of the test kit, Ivkovich did not address the authentication of the blood samples in his motion to suppress or in his subsequent memoranda in support, and he has accordingly also forfeited this issue for appellate review. *Quarterman*, 2014-Ohio-4034, ¶ 15; *Tyner*, 2014-Ohio-2809, ¶ 12-16; *Bissaillon*, 2007-Ohio-2349, ¶ 11-16; Def.'s Mot. to Suppress 3-4; Def.'s Post-Hearing Mem. in Supp. of Mot. to Suppress 2-5; Def.'s Post-Hearing Reply Mem. in Supp. of Mot. to Suppress 1-2.

**{¶ 14}** Assuming for sake of analysis that Ivkovich did raise the issue in the trial court, thereby preserving it for appeal, the testimony adduced by the State at the hearing on his motion to suppress sufficed to establish the authenticity of the samples. The phlebotomist testified that the sample vials entered into evidence by the State were the same vials he had used to draw Ivkovich's blood, and the officer who revised the attached documentation indicated that he simply "corrected" a "couple of items," including changing the "offense location" from the hospital's address to the address at which the accident occurred, and adding the name of the Dayton Police officer in charge of the investigation of the accident. Tr. of Proceedings 29-32 and 111-116. As well, the officer who asked Ivkovich to consent to the blood draw testified that he personally witnessed the phlebotomist fill and label the sample vials, and while on the stand, he authenticated the vials—among other things, pointing to the presence of his own initials and those of the

phlebotomist. Tr. of Proceedings 71-76. The toxicologist who analyzed the samples testified likewise to the vials' authenticity. *Id.* at 124, 130-132 and 138-148.

{¶ 15} Regarding the third part of Ivkovich's argument, Ivkovich claims the State did not meet its burden to demonstrate that the analysis of his blood satisfied the requirements of Ohio Adm.Code 3701-53-03, observing that the toxicologist "did not testify to any extent [about] the manner in which [his] blood sample[s] [were tested] for alcohol [or] identify and illustrate [a] second and dissimilar form of analytical confirmation." Appellant's Br. 8. Ivkovich claims further that the State did not show that the equipment used to analyze his blood was checked and certified pursuant to Ohio Adm.Code 3701-53-04. *Id.* at 9. Once again, Ivkovich forfeited appellate review of these issues by failing to address them in the trial court. *Quarterman*, 2014-Ohio-4034, ¶ 15; *Tyner*, 2014-Ohio-2809, ¶ 12-16; *Bissaillon*, 2007-Ohio-2349, ¶ 11-16; Def.'s Mot. to Suppress 3-4; Def.'s Post-Hearing Mem. in Supp. of Mot. to Suppress 2-3; Def.'s Post-Hearing Reply Mem. in Supp. of Mot. to Suppress 1-2.

{¶ 16} Irrespective of forfeiture, however, Ivkovich's argument lacks merit. Under Ohio Adm.Code 3701-53-03(A)(1), "[a]lcohol in blood, urine and other bodily substances * * * shall be analyzed based on approved techniques or methods," one of which is "[g]as chromatography." The toxicologist who analyzed Ivkovich's blood testified that he performed the analysis using "a headspace gas chromatography mass spectrometer," or in other words, that the method used to test Ivkovich's blood satisfied the requirements of Ohio Adm.Code 3701-53-03(A). Tr. of Proceedings 149-152. Furthermore, Ivkovich's assertion that "confirmation [testing was] required by [Ohio Adm.Code] 3701-53-03" is incorrect; the requirement that "[a]ll positive results of tests" be confirmed

applies only to tests for "[c]ontrolled substances or [their] metabolites [and] drugs of abuse." Ohio Adm.Code 3701-53-03(A)-(B). Even so, the toxicologist testified that he did, in fact, conduct a second chromatographic analysis to confirm the first result. Tr. of Proceedings 152-153.

{¶ 17} Similarly, though Ivkovich claims that the State did not meet its burden to show that the equipment used "was calibrated on the schedule required by Ohio Adm.Code 3701-53-04(D)," the State had no such burden. Appellant's Br. 9. Ohio Adm.Code 3701-53-04(D) mandates that an "instrument check or certification * * * be made in accordance with [Ohio Adm.Code 3701-53-04(A) and (C)] before a new evidential <u>breath testing instrument</u> is placed in service" or an existing "instrument is placed in service following repairs." (Emphasis added.) The provisions of Ohio Adm.Code 3701-53-04(D), then, do not apply to gas chromatographs. Although Ivkovich did not cite Ohio Adm.Code 3701-53-04(F), which does apply to gas chromatographs, the toxicologist testified that he calibrated the equipment used to analyze Ivkovich's blood as directed by the regulation. *See* Tr. of Proceedings 178-180.

{¶ 18} Regarding the fourth part of Ivkovich's argument, he characterizes the record as insufficient to show that the samples of his blood were retained for a minimum of one year as required by the Ohio Administrative Code; he contended in his motion to suppress that the State "improperly stored and maintained" the samples of his blood, meaning that he has not clearly forfeited this issue on appeal.[2] Appellant's Br. 11-12;

---

[2] Before the trial court, however, most or all of Ivkovich's argument on this point related to the question of whether the blood samples were refrigerated as required by Ohio Adm.Code 3701-53-05(F). *See, e.g.,* Decision, Order & Entry Overruling Def.'s Mot. to Suppress in Part 5-7, May 16, 2016.

Def.'s Mot. to Suppress 4. At the same time, in his brief he never squarely accuses the State of failing to retain the samples for the one-year period required by Ohio Adm.Code 3701-53-06(A) and instead remarks merely that "no testimony was taken on this [point] from anyone who had any first-hand knowledge." Appellant's Br. 11. Yet, as the State rejoins, the phlebotomist obtained samples of Ivkovich's blood on April 30, 2015, and the samples were introduced into evidence at the hearing on Ivkovich's motion to suppress on March 21, 2016, after which they were stored in the trial court's property room. Appellee's Br. 13-14. The record thus demonstrates that the samples were stored for at least one year.[3]

{¶ 19} We find that the issues presented by Ivkovich in support of his first assignment of error either lack merit or have been forfeited as a result of his failure to raise them before the trial court. Consequently, Ivkovich's first assignment of error is overruled.

{¶ 20} In his second assignment of error, Ivkovich contends that:

THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S BLOOD SAMPLE WAS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY OFFERED.

{¶ 21} Here, Ivkovich argues that he did not genuinely consent to provide samples of his blood to the Dayton Police. *See* Appellant's Br. 12. He insists that under the

---

[3] When the trial court held the hearing on Ivkovich's motion, the samples had been retained for approximately 326 days, and the entry indicating that the samples were transferred to the property room is dated June 9, 2016. The record does not indicate where the samples were kept between March 21st and June 9th, but they were certainly not discarded. Ivkovich, for that matter, did not request a re-analysis of the samples and has not claimed that he was prejudiced by an inability to have the samples re-analyzed between April 30, 2015 and April 30, 2016.

circumstances, true consent "would [have] be[en] nearly impossible" owing to his "severe injuries, the medication being administered to him" and "his obvious level of impairment." *See id.* at 15-16. At the time in question, Ivkovich had not been arrested. Tr. of Proceedings 67.

**{¶ 22}** Prior to his arrest, a suspect "may voluntarily * * * submit to a blood test to determine the concentration of alcohol in [his] blood." *City of Fairfield v. Regner*, 23 Ohio App.3d 79, 491 N.E.2d 333 (12th Dist.1985), paragraph one of the syllabus; *see also State v. Hill*, 2d Dist. Montgomery No. 25717, 2014-Ohio-1447, ¶ 12 (citing *Regner* with approval). Whether the suspect consents "voluntarily" is a question of fact and should be evaluated in light of the circumstances. *See, e.g., State v. Black*, 2d Dist. Montgomery No. 23524, 2010-Ohio-2916, ¶ 34; *State v. Cooper*, 6th Dist. Lucas No. L-15-1083, 2016-Ohio-3093, ¶ 21. As part of its evaluation, a court should generally consider:

1.   Whether the suspect was in custody against his will;

2.   Whether " 'coercive police procedures were used' " to obtain consent;

3.   The " 'extent and level of the [suspect]'s cooperation with police,' " if any;

4.   The suspect's " 'awareness of his * * * right to refuse consent' ";

5.   The suspect's " 'education and intelligence' "; and

6.   Whether the suspect believed " 'that no incriminating evidence [would] be found.' "

*See Black*, 2010-Ohio-2916, ¶ 35-41, quoting *State v. Loyer*, 8th Dist. Cuyahoga No. 87995, 2007-Ohio-716, ¶ 9. As noted above, Ivkovich presents this assignment of error

as a challenge to the trial court's ruling on his motion to suppress; on review, we must accordingly accept the trial court's findings of fact if they are supported by the record and independently determine whether the court correctly applied the law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 23} In the instant case, the trial court found that although Ivkovich "was on a gurney" when he consented to the blood draw, he was "not in custody at the time" because he was neither under arrest nor in handcuffs; was "free to ignore the questions" posed by the Dayton Police officer; and was theoretically "free to leave." Decision, Order & Entry Overruling Def.'s Mot. to Suppress in Part 11, May 16, 2016. It determined that the officer did not employ coercive tactics or make threats to obtain Ivkovich's consent, noting that "numerous hospital staff [were] in the trauma room with [Ivkovich] while [the officer] was there," and it credited the officer's testimony that Ivkovich "was very cooperative, did not have slurred speech, * * * responded to * * * questions appropriately and had a normal demeanor." *Id.* at 11-12; *compare with* Tr. of Proceedings 65-72. Based upon these findings of fact, the court held that Ivkovich's "consent for the blood draw was freely and voluntarily given." Decision, Order & Entry Overruling Def.'s Mot. to Suppress in Part 12.

{¶ 24} We concur with the trial court. Ivkovich was not in custody when he consented to provide samples of his blood, and the officer's testimony, as well as that of the phlebotomist, indicate that Ivkovich appeared coherent and able to respond intelligently to inquiries. Absent any evidence of coercion, we find that the first, second and third of the foregoing six factors favor the trial court's conclusion.

{¶ 25} Despite the fact that the officer intentionally did not advise Ivkovich of his

right to refuse, the officer did not have a legal obligation to provide such advice because Ivkovich had not been arrested.[4] Hence, application of the fourth factor is either inconclusive or supports the finding that Ivkovich voluntarily consented.

**{¶ 26}** The parties have offered little or no evidence of Ivkovich's education and intelligence, but Ivkovich himself indicated at his plea hearing that he holds a master's degree. Tr. of Proceedings 227. Given that Ivkovich was therefore fully capable of understanding the significance of the officer's request, the fifth factor also supports a finding of voluntariness. The sixth factor, on the other hand, favors Ivkovich's position— he must have known that the results of the blood analysis would likely incriminate him. *See* Tr. of Proceedings 69.

**{¶ 27}** On balance, however, consideration of the six factors supports the trial court's conclusion that Ivkovich consented voluntarily to the blood draw. Ivkovich's second assignment of error is overruled.

**{¶ 28}** For his third assignment of error, Ivkovich contends that:

APPELLANT'S PLEA COULD NOT HAVE BEEN ENTERED KNOWINGLY AND INTELLIGENTLY BECAUSE THE TRIAL COURT DID NOT APPRISE APPELLANT ABOUT THE MANDATORY NATURE OF THE REQUIRED PRISON TERMS.

**{¶ 29}** Ivkovich claims that at his plea hearing, the trial court failed to inform him

---

[4] In roughly comparable circumstances, advising a suspect of the right to refuse consent is often deemed to be more consistent with a custodial interrogation or an arrest than with a consensual encounter. *See, e.g.*, *State v. Whitt*, 5th Dist. Licking No. 10-CA-3, 2010-Ohio-3761, ¶ 14-16 (noting appellate decisions in which the reading of the administrative license suspension form was found to vitiate consent); *State v. King*, 1st Dist. Hamilton No. C-010778, 2003-Ohio-1541, ¶ 20-24 (discussing the same issue).

that "his conviction [under R.C. 2903.06(A)(1)(a)] required a mandatory prison term," rendering his plea involuntary. The transcript says otherwise.

{¶ 30} After the bailiff called Ivkovich's plea hearing to order, the parties notified the court that they had reached a plea agreement, and the court questioned Ivkovich about his personal background. The court then discussed the nature of the offenses to which Ivkovich intended to plead no contest, leading to the following discussion:

THE COURT: * * *. Count 1 is classified as a felony of the second degree. With that classification the maximum penalty in terms of incarceration is eight years in prison. Do you understand that?

IVKOVICH: Yes.

THE COURT: The maximum penalty in terms of a fine for that offense is $15,000. Do you understand that?

IVKOVICH: Yes.

THE COURT: Count 2 is classified as a felony of the third degree. With that classification the maximum penalty in terms of incarceration is— we have different types of felony 3s. I believe with this one it's probably[] the maximum, five years.

THE STATE: It is, Your Honor.

THE COURT: Counsel agree. Okay. Maximum penalty in terms of incarceration is five years. Do you understand that?

IVKOVICH: Yes.

THE COURT: Maximum penalty in terms of fine is $10,000. Do you understand that?

IVKOVICH: Yes.

* * *

THE STATE: And, Your Honor, also when you indicated on Count Number 1 that it was a felony of the second degree, a maximum of eight years in prison, that is a mandatory sentence.

THE COURT: Do you understand that with regarding to Count 1, Mr. Ivkovich—

IVKOVICH: Yes.

THE COURT: —that the [c]ourt cannot consider community control sanctions or probation?   There will be a prison sentence.   You understand that?

IVKOVICH: M-hum.   Yes.

Tr. of Proceedings 228-230.   As this exchange illustrates, the court did inform Ivkovich that his sentence pursuant to R.C. 2903.06(A)(1)(a) would be mandatory.

{¶ 31} In the argument accompanying his third assignment of error, Ivkovich relies entirely on the fact that the trial court did not speak the word "mandatory" in its remarks. This argument is without merit.   Ivkovich's third assignment of error is overruled.

{¶ 32} For his fourth assignment of error, Ivkovich contends that:

THE TRIAL COURT IMPROPERLY ENHANCED APPELLANT'S SENTENCE BY MAKING FACTUAL FINDINGS THAT WERE EITHER IMPROPER OR INCONSISTENT WITH THE EVIDENCE.

{¶ 33} Although the trial court did not impose any sentence "enhancement," Ivkovich insists that the court erred to his prejudice in its application of R.C. 2929.12 by

referring to "finding[s] [of fact] contrary to the [record]."  *See* Appellant's Br. 19. Specifically, he faults the court for imposing a longer than minimum sentence based upon the provisions of R.C. 2929.12(B)(2) and (6).  *See id.*

{¶ 34} On review of a felony sentence, "an appellate court may vacate or modify [the] sentence * * * only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law."  *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1; *see also* R.C. 2953.08(G)(2).  A sentence "is not contrary to law [if it falls] within the statutory range [and the trial court] expressly state[s] that it * * * considered the purposes and principles of sentencing [under] R.C. 2929.11 [and] 2929.12."  *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 32 (2d Dist.), citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18.

{¶ 35} Here, the termination entry reflects that the trial court merged Count 1 and Count 2 of the indictment for sentencing purposes, and the State elected to proceed on Count 1, which charged Ivkovich with violating R.C. 2903.06(A)(1)(a).  According to R.C. 2903.06(B)(1)-(2) and (E), a violation of R.C. 2903.06(A)(1)(a) is a second degree felony requiring a mandatory term of imprisonment.  Under R.C. 2929.14(A)(2), a court may impose a term of imprisonment from two to eight years for a second degree felony; the court in this case sentenced Ivkovich to a term of four years.  Tr. of Proceedings 252.

{¶ 36} The trial court expressly stated during Ivkovich's sentencing hearing that it had considered the provisions of R.C. 2929.11-12.  *Id.* at 250-251.  Referring by implication to R.C. 2929.12(B)(2), the court remarked that the victim, Sharon Crawford, "suffered serious physical * * * harm as a result of the offense, naturally the most serious

physical harm [a person] can suffer, loss of life." *Id.* at 251. Ivkovich argues that because "the death of another" is an element of aggravated vehicular homicide under R.C. 2903.06(A)(1)(a), the court's finding that Crawford's death made the offense "more serious" was "simply improper." Appellant's Br. 19.

**{¶ 37}** Although this argument has merit to the extent that the trial court considered Crawford's death as a factor indicating that Ivkovich's conduct was more serious than conduct normally constituting a violation of R.C. 2903.06(A)(1)(a), the sentence imposed by the court falls within the permissible statutory range of two to eight years. R.C. 2929.14(A)(2); Tr. of Proceedings 252. The sentence, in other words, was not contrary to law. *See Rodeffer*, 2013-Ohio-5759, ¶ 32.

**{¶ 38}** Ivkovich also faults the trial court for its determination "that [his] relationship with [Crawford] facilitated the offense." Tr. of Proceedings 251; *see also* R.C. 2929.12(B)(6). In his brief, he suggests that his relationship with Crawford "could in theory constitute an exacerbation if there [were] evidence that [she] was, for example, initially unwilling to ride in the car with [him] [because of] his intoxication" and "agreed to ride with him [only] under coercion, deception, or through force, if any of which were facilitated by their relationship." Appellant's Br. 19. Similarly, he suggests that a "scenario could * * * be imagined wherein [Crawford] was unconscious" and was carried to his car, "removing her choice in the matter." *Id.* at 19, fn.6

**{¶ 39}** The premise underlying these suggestions is an obvious straw man. That is, Ivkovich presupposes that his relationship with Crawford, his "longtime girlfriend," could not have made his offense more serious for purposes of R.C. 2929.12(B) if she willingly chose to allow him to drive her home. Appellant's Br. 3. Yet, Crawford's choice

to ride home with Ivkovich can hardly be considered outside of the context of their romantic involvement, and her choice would seem likely to have been prompted at least in part by the familiarity, if not confidence and trust, that would naturally have arisen in the course of their long-term relationship.

{¶ 40} Having reviewed the record, we find that it supports the trial court's findings for purposes of R.C. 2929.12(B). Irrespective of the trial court's reference to Crawford's death as a factor indicative of greater seriousness pursuant to R.C. 2929.12(B)(2), the sentence imposed fell within the statutory range for a second degree felony and was not otherwise contrary to law. Ivkovich's fourth assignment of error is overruled.

### III. Conclusion

{¶ 41} We find that the securing, testing and retention of Ivkovich's blood substantially complied with the requirements established by the Ohio Administrative Code; that Ivkovich voluntarily consented to provide samples of his blood for toxicological analysis; that the trial court informed him that he would have to serve a mandatory period of incarceration; and that the sentence imposed by the trial court was not contrary to law. Therefore, we overrule Ivkovich's assignments of error and affirm the trial court's ruling on his motion to suppress, the acceptance of his plea agreement and the sentence imposed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurring in judgment only.

Copies mailed to:

Mathias H. Heck, Jr.
Heather N. Jans
Brock Schoenlein
Hon. Timothy N. O'Connell